Argued and submitted May 24, 1991, reversed and remanded for new trial
January 15, 1992

## STATE OF OREGON,
*Respondent,*

*v.*

## SAMUEL LEE BROWN,
*Appellant.*

(C88-09-36545; CA A62322)

825 P2d 282

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave

Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

Rossman, J., dissenting.

## DE MUNIZ, J.

Defendant was convicted on two counts of theft in the first degree by receiving. ORS 164.055. He assigns as error the trial court's denial of his motion to suppress evidence found during a warrantless search of his automobile. We reverse.

Defendant was on parole when he was arrested. Among his conditions of parole was this special condition:

"Parolee is to submit person, residence, vehicle and property to search by a parole officer having reasonable grounds to believe such search will disclose evidence of parole violation."

See OAR 255-70-001, Ex. J, Special Conditions, ¶ 1. On August 31, 1988, defendant's parole officer, Guice, visited defendant at his home and saw a "drug scale," some baggies, a bullet and a couple of knives on a table. He also observed that defendant appeared to have money, but no job, that he kept a pit bull dog and that the residence had an alarm system. On the basis of his observations, Guice decided to search defendant's "residence, vehicles, [and] any property belonging to defendant at that site."

On September 21, Guice went to the residence with a search team that included police officer Hascall. Defendant was not home, so they waited. When defendant arrived, Guice told him that they were there to search his "person, property and vehicles." Defendant let them into the house. During the search, defendant asked if he could change into another pair of pants. Guice and Hascall consented. Before changing, defendant told the officers to search the pants first. Their examination revealed $920 and two or three sets of car keys, which were placed on the bed. According to Hascall, defendant "reached over and he grabbed the three sets of keys and clutched them in his fist." Hascall asked defendant to return the keys to the bed. Defendant either said "What keys?" or "You don't need those keys." Hascall testified that defendant put two sets on the bed, but "palmed" one set, "tr[ying] to conceal that he had the third set in his hand." Hascall told defendant to put that set on the bed. He testified that defendant "began getting excited and belligerent," so the officers handcuffed him and took the keys from his hand.

Hascall used the keys to open defendant's automobile. Other officers searched two other cars, more or less simultaneously. Hascall found the stolen goods in the trunk of defendant's car. Another officer found six ounces of cocaine in one of the other cars. At some point, an officer found a bag of cocaine in the house, but Hascall did not find out about it until after the cars had been searched.

The trial court's findings were cursory:

"[W]hen the sets of keys * * * were displayed, the Defendant tried to retrieve them, and the Defendant's statement regarding something to the effect of 'What keys' shows he didn't want to give up possession of the keys; that only on police request did the Defendant return some of the keys, and that the remaining keys were forcibly taken from the defendant. It seems clear to me that the Defendant did not consent to the search of the vehicles in question, and that it was clear that any consent to search up to that point did not include the vehicles."

The court made no findings as to whether defendant tried to hide the keys or whether he became belligerent only after Hascall told him to give up the keys.

At the conclusion of the hearing on defendant's motion to suppress, the court orally ruled that defendant did not consent to the search of his cars and that "any consent to search up to that point did not include the vehicles." However, the court later reversed itself in a letter ruling, concluding that

"defendant did agree when paroled, to submit to a search of his person, premises or vehicle. The parolee's later consent to search is not required."

With the repeal of the Civil Death Statute in 1975, convicted felons no longer automatically lose all their civil rights.[1] ORS 137.281 suspends certain rights during incarceration and automatically restores them upon release or

---

[1] *Former* ORS 137.240, commonly known as the Civil Death Statute, provided in part:

"(1) Conviction of a felony:

"(a) Suspends all the civil and political rights of the person so convicted.

parole. Except as limited by his conditions of parole, defendant had the same rights upon parole as any other citizen. The only limitation on defendant's right to be free from unreasonable searches and seizures was the requirement that he would submit to a search if his parole officer had reasonable grounds to believe that the search would disclose evidence of a parole violation.

■    Defendant argues that Guice did not have reasonable grounds to search the cars. He concedes that, if Guice did have reasonable grounds, refusal to submit would have violated the parole conditions and subjected him to revocation. ORS 144.343. However, defendant contends that his refusal would not have authorized a nonconsensual search without a warrant, because none of the exceptions to the warrant requirement applied. We conclude that Guice did not have reasonable grounds to believe that the cars contained evidence of a parole violation and that their search was unlawful.

---

"* * * * *

"(2) However, a person convicted of a felony may lawfully exercise all civil rights during any period of parole or probation or upon final discharge from imprisonment."

In 1975, the legislature repealed ORS 137.240. Or Laws 1975, ch 781. ORS 137.275 now provides:

"Except as otherwise provided by law, a person convicted of a felony does not suffer civil death or disability, or sustain loss of civil rights * * *."

ORS 137.281 now provides, in part:

"(1) In any felony case, when the court sentences the defendant to a term of imprisonment * * *, the defendant is deprived of all rights and privileges described in subsection (3) of this section from the date of sentencing until:

"(a) The defendant is discharged or paroled from imprisonment; or

"(b) The defendant's conviction is set aside.

"* * * * *

"(3) The rights and privileges of which a person may be deprived under this section are:

"(a) Holding a public office or an office of a political party or becoming or remaining a candidate for either office;

"(b) Holding a position of private trust;

"(c) Acting as a juror; or

"(d) Exercising the right to vote.

"* * * * *

"(5) The rights and privileges withdrawn by this section are restored automatically upon discharge or parole from imprisonment * * *."

When Guice visited defendant's residence on August 31, 1988, he observed, among other things, a drug scale that reasonably suggested that defendant was selling drugs. In the light of the fact that defendant appeared to have money, but no job, Guice reasonably believed that defendant's drug sales were ongoing. The 3-week interval between his initial visit and the search did not render the information from Guice's initial observations unreliable. When he went to defendant's home on September 21, he had reasonable grounds to believe that a search of defendant's residence would disclose evidence of a parole violation.

Regardless of whether a search is authorized by probable cause, reasonable suspicion or "reasonable grounds,"[2] the state must have an articulable basis for invading any privacy interest. Defendant's "person, residence, vehicle and property" each represent distinct privacy interests protected by Article I, section 9, and the Fourth Amendment. The search of defendant's cars was valid only if Guice had reasonable grounds to believe that evidence of a parole violation would be found in the cars.

Guice had observed things in defendant's house that made him suspect that defendant was selling drugs. However, those things had no necessary nexus to the cars. Therefore, when Guice began to search defendant's home, he had no articulable basis for believing that the cars contained evidence of a parole violation. The state concedes that the incident with the keys was all that directed the officers to look in defendant's cars. Defendant contends that, by retaining the keys, he was merely asserting his right not to have the cars searched. The state responds that there is "a difference between asserting a constitutional right and attempting to hide evidence from the officers."

In *United States v. Alexander*, 835 F2d 1406, 1409 n 3, (11th Cir 1988), the court noted that

"a defendant's refusal to consent to a search cannot establish probable cause to search. A contrary rule would vitiate the protections of the Fourth Amendment."

---

[2] Defendant asserts that "reasonable grounds" means the same thing as "reasonable suspicion." We have no need to decide whether he is right.

Oregon Courts have reasoned similarly. In *State v. Evans*, 16 Or App 189, 517 P2d 1225, *rev den* (1974), an officer encountered the defendant in the street at 3:17 in the morning. The officer asked him what was in his jacket pockets, and he answered, "Golf balls." After the defendant removed a golf ball from one of his pockets, the officer asked to see what was in the other pocket. The defendant said that he did not want to show the officer and turned away. The officer bent down to view what was in the pocket and observed a plastic bag containing marijuana. 16 Or App at 192. In affirming the trial court's decision to suppress the evidence, we said:

"The defendant, by refusing to disclose the contents of his other pocket and by turning to avoid observation was guilty only of an unsophisticated attempt to assert his right to privacy and would clearly, had he felt free, have walked away." 16 Or App at 197.

In *State v. Gressel*, 276 Or 333, 554 P2d 1014 (1976), the defendant was stopped by a police officer because he matched the description of a burglary suspect. When the officer asked if he could search the defendant, he replied that he did not want to be searched, because he was on parole. The officer patted the defendant down for weapons and felt two soft bulges in his jacket pockets. The officer asked the defendant what was in his pockets, and the defendant responded by saying, "Nothing." The officer then reached into one of the defendant's pockets and withdrew a bag of marijuana. 276 Or at 336. In reversing the conviction, the Supreme Court held:

"If refusal to be searched were to furnish probable cause to search, anyone could be searched against his will. A mere assertion of one's constitutional rights cannot be a basis for depriving an individual of those rights. We view defendant's response to the inquiry concerning the contents of his pockets as merely an unsophisticated attempt to assert his right of privacy.

"* * * * *

"Defendant's refusal to give consent to a search undoubtedly caused the officer to have a healthy suspicion that defendant was probably in illegal possession of something; but such a suspicion, however well founded, having been aroused merely on the basis of an assertion of one's constitutional rights, can play no part in creating probable cause for a search." 276 Or at 338.

■     Allowing the police to conduct a search on the basis of the assertion of a privacy right would render the so-called right nugatory. This principle is equally valid, regardless of whether probable cause, reasonable suspicion or "reasonable grounds" circumscribes the authority for invading the privacy interest. We see no meaningful distinction between *State v. Gressel, supra, State v. Evans, supra,* and this case. All we know is that defendant held onto at least one set of keys until the search team retrieved them by force and that defendant did not want his cars to be searched. Hascall testified that defendant tried to hide the keys and that he became "excited and belligerent." The trial court made no express or implied findings about that. *See Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). We lack the authority to make such findings. However, whether defendant tried to hide the keys or simply held onto them is irrelevant. Neither action could amount to more than a manifestation of his desire not to have his cars searched. Until defendant grabbed the keys, the officers had no independent basis to seize them and no reasonable grounds to search the car.

The state argues that the act of concealing the keys is akin to flight, which may contribute to a basis for probable cause. *State v. Williams,* 253 Or 613, 456 P2d 497 (1969). However, the defendant's flight in *Williams* augmented articulable facts indicating that he was in possession of a controlled substance. In contrast, furtive gestures alone cannot give rise to probable cause. *State v. Flores,* 58 Or App 437, 440, 648 P2d 1328, *rev'd on other grounds* 294 Or 77, 653 P2d 960 (1982). Furtive gestures can give rise to probable cause only if they are coupled with an attempt to hide a suspicious object. 58 Or App at 440. There was nothing suspicious about defendant's keys, other than the fact that he did not want the officers to use them for access to his cars.

Because the officers did not have reasonable grounds to believe that the cars contained evidence of a parole violation, defendant's right to refuse consent to their search was the same as the right of any other citizen. Defendant's action in grabbing the keys and secreting them could be nothing more than a clumsy effort to assert his right to the privacy of his cars. Allowing the police to use defendant's assertion of a privacy right as the basis for depriving him of that right would

render the promise of Article I, section 9, illusory. Defendant's motion to suppress should have been granted.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

I do not dispute the majority's observation that, "[e]xcept as limited by his conditions of parole, defendant had the same rights on parole as any other citizen." 110 Or App at 608. However, there is a big difference between asserting a constitutional right and attempting to hide evidence from the police. This is why I must disagree with the majority's conclusion that the search of defendant's cars was unlawful. I believe that the evidence establishes that Guice did have reasonable grounds to believe that the cars contained evidence of a parole violation, and I therefore dissent.

My analysis of this case begins with defendant's concession that, if Guice had reasonable grounds to search the cars, defendant's refusal to submit to the search would have violated his parole conditions and made him subject to revocation proceedings. Although the majority correctly states that there was ample evidence of drug sales to support the search of the house, it erroneously concludes that there were no additional facts that could have led Guice to believe that defendant's cars would contain other evidence of criminal activity.

The Supreme Court has held that, although "mere suspicion" is insufficient to justify making an arrest without a warrant, a defendant's act of taking flight can constitute an independent basis for probable cause or reasonable grounds to arrest. In *State v. Williams*, 253 Or 613, 615, 456 P2d 497 (1969), the court held:

> "[E]ven if we assume that the information given by the informer would not be sufficient to justify the issuance of a warrant of arrest, *a new set of facts prior to the arrest appeared when the defendant fled* on observing the approach of the officers." (Emphasis supplied.)

Similarly, even if we assume that the grounds for a search of defendant's house was not sufficient to justify the search of his cars, a new set of facts took shape before the car search when defendant grabbed the car keys, denied their existence,

returned two sets of keys and attempted to conceal the third set. Those acts indicated defendant's consciousness of guilt. Given that Guice already possessed reasonable grounds to believe that defendant was selling drugs, the attempts to hide the car keys simply increased Guice's reasonable suspicion and directed him to the cars where he found the stolen property.

Because the trial court decided this case correctly, we should affirm.