Argued and submitted September 26, 2008, affirmed March 19, petition for review allowed July 9, 2009 (346 Or 363)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CAROLYN ANN MORGAN,
*Defendant-Appellant.*

Jackson County Circuit Court
062638BFE; A134236

203 P3d 927

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Sercombe, Judge, and Carson, Senior Judge.

EDMONDS, P. J.

Sercombe, J., dissenting.

## EDMONDS P. J.

Defendant appeals from a conviction for unlawful possession of heroin, ORS 475.854, and assigns error to the trial court's denial of her motion to suppress evidence seized during a traffic stop. We affirm.

The trial court made the following findings of fact:

"1)   Defendant Morgan was a passenger in a vehicle driven by Defendant Brand.

"2)   Deputy Lance lawfully stopped the vehicle driven by Brand.

"3)   Brand had a suspended license. He was arrested and placed in the Deputy's patrol vehicle.

"4)   Deputy Lance checked to see if Morgan had a valid license to drive the vehicle. She did. She was also the registered owner of the vehicle.

"5)   Deputy Lance asked for and received permission from Morgan to search the vehicle prior to releasing it to her.

"6)   When Morgan exited the vehicle she also took her bag. The deputy told her he needed to look in her bag for officer safety if she was going to keep it or she could leave it in the car.

"7)   Morgan clutched her bag, shook her head and backed up into the car when the deputy stated he needed to search the bag. She became more nervous upon his statement. She then reached into the bag.

"8)   The deputy then took the bag for officer safety reasons and saw paraphernalia for drug use."

Based on the above findings, the trial court concluded that Lance was entitled to establish whether defendant had a valid license before releasing the vehicle to her. It also held that checking defendant's license was not a seizure because, as a passenger, she could have left the area of the traffic stop without giving Lance her license. Additionally, the court applied the principle that an officer may take

reasonable steps necessary for the officer's protection based on specific and articulable facts of which the officer was aware at the time. Thus, the court reasoned,

> "Here the defendant had possession of a large bag, big enough to contain weapons, became nervous when told the bag would need to be searched and then clutched the bag and put her hand in it. These facts along with the other facts set forth above are adequate for the officer to seize the bag and search it in order to protect himself."

On appeal, defendant argues that she was unlawfully stopped without reasonable suspicion when the officer requested her identification before turning her car over to her. Alternatively, she argues that she was unlawfully stopped when the officer asked her consent to search the car because the officer lacked reasonable suspicion to search the car. Finally, defendant argues that a search for officer safety purposes was not reasonable under the circumstances. The state counters that the officer was required by ORS 809.720 to impound and tow the car unless he could ascertain the ownership of the car and whether the putative driver was validly licensed. Under the circumstances, the state concludes that a reasonable person would have understood the officer's inquiry to have been nothing more than a brief conversational encounter, one that did not amount to a restraint on defendant's freedom of movement. The state also argues that the officer's request for consent to search the car did not amount to a seizure of defendant's person under Article I, section 9, of the Oregon Constitution and that the officer had a reasonable concern for his safety when defendant put her hand into the bag.

Under the holding in *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968), we are bound by the trial court's findings of historical fact if they are supported by the evidence. If findings are not made on all the factual issues, and there is conflicting evidence regarding those issues, we will presume that the trial court decided those factual issues in a manner consistent with its ultimate conclusion. Here, the trial court's findings are supported by the evidence. Thus, the question on appeal is whether the trial court came to the correct legal conclusions based on those findings.

■     ORS 809.720(3) provides, in part:

"A vehicle impounded under subsection (1) of this section shall be released to a person entitled to lawful possession upon compliance with the following:

"(a)   Submission of proof that a person with valid driving privileges will be operating the vehicle[.]"

The trial court found that defendant's vehicle was effectively impounded at the point in time when Lance asked defendant for her driver license. Thus, the state is correct when it asserts that the request for, and brief retention of, defendant's driver license for a records check to determine if she could lawfully drive her vehicle was for a noncriminal investigative purpose. In that light, this case is analogous to what occurred in *State v. Holmes*, 311 Or 400, 813 P2d 28 (1991). In *Holmes*, the defendant was stopped by an officer so that he could be advised of an accident in the road ahead and rerouted around the accident scene. Oregon statutes prescribe the authority of a police officer to direct, control, or regulate traffic at the scene of an accident and to require a person to stop his or her vehicle. In determining whether the officer's actions violated the defendant's rights under Article I, section 9, of the Oregon Constitution, the court identified three categories of encounters along the continuum of contacts between law enforcement officers and citizens. Those categories include (1) encounters that do not constitute seizures and for which no justification is required under the constitution, (2) restraints of movement for criminal investigative purposes that require reasonable suspicion that a crime has been committed, and (3) arrests that require a demonstration of probable cause that a crime has been committed and that the defendant committed it. The *Holmes* court held that no seizure of the defendant's person occurred in the constitutional sense when the officer stopped the defendant's car to advise the defendant of the accident and the detour. That reasoning informs the result in this case. We conclude based on the above circumstances that, when Lance asked defendant for her driver license and retained it in order to comply with the requirement of ORS 809.720, those

actions did not rise to the level of a seizure under Article I, section 9.[1]

■	Defendant also argues that she was unlawfully seized when, before " 'releasing the vehicle' to defendant[,] Lance asked her for permission to search the car to make sure he 'wasn't leaving her with any weapons or contraband.' " (Footnote omitted.) Focusing on the fact that Lance asked for defendant's identification before he asked for consent to search her car, defendant concludes,

> "[a] reasonable person would not feel free to leave under those circumstances. Requesting consent to search does not itself necessarily mean that a person is constitutionally seized. However, it does indicate a seizure under these circumstances."

Thus, in defendant's view, because the request for consent to search was unlawful, all subsequently discovered evidence must be suppressed.

■■	We disagree that a request for consent to search following a lawful retention of defendant's driver license would cause a reasonable person to believe that his or her liberty or freedom of movement was being restrained under the circumstances of this case. We note that, in making the request, Lance did not act in a coercive manner. Under the "seizure" standards of Article I, section 9, "law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification if a particular encounter proves fruitful." *Holmes*, 311 Or at 410. "Rather, [an] encounter is a 'seizure' of a person only if the officer engages in conduct significantly beyond that accepted in ordinary social intercourse." *Id.* Moreover, it is immaterial that the content of the conversation is different from what might be engaged in by ordinary citizens. *Id.* Under the circumstances of this case, we conclude that

---

[1] The facts of this case are in contrast to the facts in *State v. Ashbaugh*, 225 Or App 16, 18-19, 200 P3d 149 (2008), where the request to search was preceded by police officers' unlawful detention of defendant's person when they asked for and retained her identification for a period of time.

Lance's request to search defendant's car before he released it to her did not implicate the provisions of Article I, section 9.

■      The final issue is whether it was reasonable for Lance to believe that defendant presented a clear and present danger to his safety when she put her hand inside the purse. The Supreme Court's decision in *State v. Amaya*, 336 Or 616, 89 P3d 1163 (2004), provides some general parameters in deciding the issue in this case. In *Amaya*, an officer asked the defendant, a passenger, to step out of a van that had been stopped for a traffic violation. The defendant took her bag with her when she stepped out of the van, although the officer had encouraged her to leave it inside. The defendant placed the bag on the ground between her feet where it was covered by her trench coat. The officer became concerned for his safety because he believed that she might have a weapon in the bag. The officer asked her what was in the bag, and she said that there was a gun in the bag for which she did not have a concealed weapons permit. The officer then seized the bag, searched it, and found a gun. Based on the totality of the circumstances, the court concluded that the officer reasonably suspected that the defendant posed an immediate threat to his safety. *Id.* at 633-34.

Defendant seeks to distinguish the circumstances in this case from the circumstances in *Amaya*. She argues that she was never aggressive, she was surrounded by two police officers who were armed, and "[s]he did not consent to a search of her purse and her actions in asserting her right to privacy should not be spun into a threat to officer safety for the sake of justifying the search of defendant's purse."

■      Initially, we observe that cases involving the lawfulness of searches and seizures under Article I, section 9, must be decided on their own facts. Although the circumstances of other cases, including *Amaya*, may inform a particular result, they are rarely controlling because of the myriad of factual circumstances that can arise. In this case, Lance testified that while he was asking for consent to search the car, defendant spontaneously stepped out of the car with her purse although she had not been asked to leave the car. He explained, "The purse actually came as a surprise to me.

When she came out with it, it was a strange behavior that drew my attention to it." He elaborated:

> "What caused me concern in Ms. Morgan's case was her behavior in the way she grabbed the purse, her behavior and response to my offering to let her leave it in the vehicle, and then her behavior as she backed away from me and tried to reach her hand inside of the purse. Truly at that—at the point that she got out of the vehicle, it made very little difference to me one way or another if she left the purse in the vehicle or if she took it with her. My problem was with leaving her with access to a weapon when I wasn't going to be able to insure that there wasn't one in it."

In *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987), the court noted that

> "it is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable latitude to take safety precautions in such situations."

In light of defendant's actions that were presented to Lance, we conclude that the general principle from *Bates* that it is not a court's function to second-guess an officer's judgment who has to make what could be a life-or-death decision in a matter of seconds is applicable to the circumstances of this case. We note that the car was in the *de facto* legal custody of the officer—he did not have to turn it over to defendant; rather, he could have lawfully continued with the impoundment process. Moreover, defendant had voluntarily given Lance permission to search the car. In order to search the car, it was necessary that defendant leave the car. The execution of the search of the car also meant that the officer would be required to turn his back on defendant, that she could be out of his line of sight, and that he would be preoccupied with the details of the search.

Lance told defendant that she could leave the purse in the car or take it with her, but if she took it with her, he would have to search it. There is no evidence that the purse would have been searched had defendant left it in the car.

The officer's communication to defendant did not violate Article I, section 9. Rather, it gave her a choice: leave the purse in the car where it would not be searched or remove it from the car where it would be searched. Had the former occurred, there would have been no invasion of any privacy or possessory interest that would have constituted a search or seizure under Article I, section 9. Had the latter occurred, any seizure and search would have been the result of defendant's voluntary consent. Defendant opted for neither alternative.[2] Instead, she grabbed the purse, nervously backed away from the officer, and attempted to reach or did actually reach inside it, actions that came as a surprise to Lance. Defendant's actions prompted Lance to seize the purse because he was concerned that defendant was reaching for a weapon.

The dissent apparently agrees with all the above facts but opines that the officer's belief that defendant could be reaching for a weapon was not an objectively reasonable belief, observing, in part, that defendant "was not suspected

---

[2] The dissent argues that defendant's purse was seized when "defendant was ordered to part with it * * *." 226 Or App at 528 (Sercombe, J., dissenting). The "seizure" of an object occurs "when there is a significant interference with a person's possessory or ownership interests in property." *State v. Owens*, 302 Or 196, 206-07, 729 P2d 524 (1986). The dissent inserts an issue into the case that was not presented to the trial court or to this court on appeal. In the trial court, defense counsel did not argue that Lance's statement effectuated a seizure of defendant's purse by significantly interfering with defendant's possession of it. Rather, he made a different argument: that "[Lance] hasn't got a right to ask her to search that bag unless he has a reason to believe, before he asks that question, that she has something that is either contraband or may be dangerous to him." On appeal, defendant reiterates that her purse was seized when the officer asked for her identification, or at a later time when the officer asked for consent to search her car, and that Lance did not have a reasonable suspicion that defendant presented a danger to his safety when he seized defendant's purse. Significantly, the trial court did not have the opportunity to rule on the issue of whether defendant's purse was seized when Lance asked defendant to leave her purse in the car or allow it to be searched. Moreover, the trial court did not find that Lance "ordered" or commanded defendant to give the purse to him as the dissent implies. Rather, it found that as a condition of the search of the car, "he needed to look in her bag for officer safety if she was going to keep it or she could leave it in the car." Defendant could have revoked her consent to search the car and permitted it to be impounded, or left the purse in the car, or delivered it to Lance to be searched. Whether Lance's giving of those alternatives to defendant amounted to a *significant* interference with defendant's possessory interest in the purse as distinguished from whether Lance's conduct significantly interfered with defendant's freedom of movement is not an issue that has been briefed or argued by the parties. Consequently, under ORAP 5.45, the issue the dissent frames for review is not properly before us.

of any crime," and was not "aggressive in her conduct or speech." 226 Or App at 528 (Sercombe, J., dissenting). What the dissent fails to effectively confront is the import of defendant's failure to comply with the officer's instructions followed by her furtive gestures with respect to her purse. Defendant had no objectively apparent reason to clutch her purse, back away from the officer, and then *to reach into it*. The dissent relies on the "common observance that a person is loath to part with his or her wallet or purse" and concludes that "[d]efendant's behavior was in no way surprising or suspect." *Id.* at 528. But even if the dissent's "common observance" is accurate, it does not account for the fact that defendant reached into her purse under circumstances where she had been asked to leave it in the car or to permit it to be searched. At the point in time when defendant reached into her purse, a reasonable person would question what motivation prompted that action when there was no apparent reason for it. Presumably, the dissent would not construe the officer safety rule to require that an officer actually observe a person withdraw a weapon from a closed container before the officer could seize the container to protect himself from a potentially dangerous situation.

In sum, the *Bates* rule does not require probable cause before an officer can take reasonable steps to protect himself and others during the course of a lawful encounter with a citizen. Rather, the rule requires a "reasonable suspicion," based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury. In this case, the officer articulated specific facts that prompted him to seize defendant's purse; he did not act based on an intuition or a sixth sense. Thus, the determinative issue is whether those facts amount to a "suspicion" that a reasonable person could arrive at, or whether the officer's subjective suspicion was objectively unreasonable. What constitutes a "reasonable suspicion" was discussed in a different context by the court in *State v. Valdez*, 277 Or 621, 624-29, 561 P2d 1006 (1977) (construing ORS 131.605(5)).[3] In fleshing out what the legislature intended when it enacted ORS

_____

[3] ORS 131.605(5) provides that the words " '[r]easonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625."

131.605(5), the court distinguished police action based entirely on officer instinct and experience from suspicions based on specific, articulable facts. We apply the same standard in this context. Here, Lance based his subjective belief on defendant's unannounced act of reaching into her purse after backing away from him and ignoring his instructions. Those actions constitute specific, articulable facts that would cause a reasonable person to be concerned for his or her safety, given the totality of the circumstances. Accordingly, we decline to second-guess Lance's decision and to hold that his suspicion was unreasonable.

Affirmed.

**SERCOMBE, J.,** dissenting.

Defendant's refusal to abandon her purse during the course of a traffic stop did not signal any threat to the police investigator that was sufficient to justify seizure of her purse. Nor does defendant's nervous reaction to a police officer's demand to confiscate her purse suffice to allow a search of the purse for weapons. I agree with the majority that courts must give considerable latitude to police officers to take safety precautions during times of potential danger. However, defendant's conduct here, in the context of her cooperative behavior with police and in the absence of any evidence connecting defendant to criminal or violent activities or tendencies, simply was not hostile to the police officers. That nonhostile conduct did not suggest an immediate threat of serious physical injury to the police officers, so as to excuse the need to obtain a warrant to seize and search her purse under Article I, section 9, of the Oregon Constitution. I dissent from the majority's conclusion to the contrary.

The facts that preceded the seizure and search of the purse are not complicated. The majority accurately quotes the trial court's findings; those findings are supported by evidence in the record and are binding on appeal. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We are, however, obliged to assess whether those findings support the trial court's legal conclusions. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

The trial court found that defendant was a passenger in an automobile that was lawfully stopped by Deputy Lance. The stop was for two suspected traffic violations. The driver had a suspended driver's license and was arrested. Lance asked defendant if she had a valid driver's license. Defendant gave Lance her driver's license, and Lance checked on its validity and whether defendant was subject to any outstanding warrant. After being advised by dispatch that defendant was the owner of the car, had a valid driver's license, and was not subject to any warrant, Lance returned defendant's license to her. He then told defendant that he did not need to tow the car. According to his report, Lance then asked defendant if he "could search her vehicle to make sure there were no weapons or drugs inside." The report continues that defendant "told me I could and stepped out of the car." Lance testified that "[t]he door was open, and she stood up out of the vehicle on her own."

When defendant stood up, she took a tote bag or purse with her. Another police officer stood on the other side of the open passenger door. Lance testified that during the search of the car, the second police officer "was going to be with [defendant] at the front of the car so that I didn't have to worry about what she was doing." Lance further testified that he "didn't have any concern about [defendant's] danger to [him] until she picked up this bag and stepped out of the car with it."

The trial court found that "[w]hen [defendant] exited the vehicle she also took her bag. The deputy told her he needed to look in her bag for officer safety if she was going to keep it or she could leave it in the car."[1] In response, "[defendant] clutched her bag, shook her head and backed up into the car when the deputy stated he needed to search the bag. She became more nervous upon his statement. She then reached into the bag."[2] Lance then took possession of the bag

---

[1] Lance stated, "I gave her the choice of taking the bag with her and allowing me to look through it or leaving it in the vehicle."

[2] Lance's testimony was equivocal on whether defendant reached into the bag. His narrative report stated that "defendant *began to reach* her right hand in the bag and began to back away from me." (Emphasis added.) He testified on direct examination that "[defendant] started backing up towards the door and clutching the bag like this and *reached her hand* into the bag." (Emphasis added.) But on

and examined its contents. Those contents included the evidence sought to be suppressed.

The majority concludes that "defendant's unannounced act of reaching into her purse after backing away from him and ignoring his instructions * * * constitute specific, articulable facts" justifying the search and seizure based on officer safety. 226 Or App at 525. In my view, the seizure and search of the purse were different acts; each action must be justified separately. *State v. Tanner*, 304 Or 312, 316, 745 P2d 757 (1987) ("Searches and seizures are separate acts calling for separate analysis.").

Property is seized when a law enforcement officer significantly interferes, even temporarily, with a person's possessory or ownership interest in property (including by a show of force). *State v. Owens*, 302 Or 196, 207, 729 P2d 524 (1986). Defendant's purse was seized when Lance directed that it be given to him or left in the car. Warrantless searches and seizures are *per se* unreasonable unless the state proves that the search falls within an exception to the warrant requirement. *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988). The state argues, and the majority concludes, that officer safety concerns justified the seizure of defendant's purse. The Supreme Court explained that exception in *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987):

> "[W]e hold that Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

The reasonableness of an officer's actions is judged "under the circumstances as they reasonably appeared at the time the decision was made." *Id.* at 525.

At the time the purse was seized and defendant was given the choice to abandon the purse in the car that was

---

cross-examination, Lance testified, "and then * * * as she backed away from me [she] *tried to reach* her hand inside of the purse." (Emphasis added.) The court's finding that defendant "reached into the bag" is supported by the record.

going to be searched or give it to Lance, the only evidence tending to show an immediate threat of injury was that defendant took her purse with her when she got out of the car. Up to that point, according to Lance, there was no concern that defendant was a danger to him.

Defendant's retention of her purse in those circumstances was ordinary behavior. It is a fact of common observance that a person is loath to part with his or her wallet or purse. Defendant's behavior was in no way surprising or suspect. Any suspicion that defendant was a threat, *solely because she retained her purse* when she left the car to allow it to be searched, was not a reasonable suspicion.

That is not to say that retention of a bag or an item of clothing large enough to conceal a weapon could not give rise to alarm in different circumstances. But there are no such qualifying circumstances in this case. Defendant was not suspected of any crime. She was not associated with any criminal. Defendant was not stopped as part of a criminal investigation. She was not aggressive in her conduct or speech. Indeed, Lance testified that she was "relaxed and cordial." Defendant had voluntarily consented to a search of her car. She gave no reason for concern until she stood up with her purse. It was at that point that the purse was seized.

Thus, I conclude that the purse was seized when defendant was ordered to part with it and that there was no reasonable suspicion at that time that defendant posed a threat to Lance or anyone else. That seizure, then, was unreasonable under *Bates*, and the evidence obtained from a search of the improperly seized purse should have been suppressed.[3] Even if the purse was not seized until Lance took

---

[3] The majority concludes that ORAP 5.45 prevents us from fully analyzing defendant's preserved Article I, section 9, claim that her purse was unlawfully seized. 226 Or App at 523 n 2. Defendant moved to suppress evidence in the proceedings below because, among other reasons, "an officer safety concern did not exist justifying the search of defendant's black bag." On appeal, defendant argues that "Lance did not have probable cause to believe that defendant presented a danger to his safety to seize her purse." The resolution of defendant's constitutional claim necessarily requires a legal determination of *when* the purse was seized and an evaluation of the threat to officer safety *at that time* under the *Bates* standard. We are bound to that task by defendant's assignment of error. And, in my view, we are obliged to make a correct legal determination of the timing of the seizure without regard to the specific details of the parties' arguments. The determination of

possession of it, the facts that occurred when defendant stood up do not create a "reasonable suspicion * * * that [defendant] might pose an immediate threat of serious physical injury to the officer or to others then present" under *Bates*. Those facts are that defendant reacted nervously to Lance's demand, and that she "clutched the bag to her chest," gave reasons why it should not be searched, and reached into the bag.

Defendant's assertion of a privacy interest in her purse in this fashion created no reasonable suspicion of criminal activity sufficient to justify the seizure or search. *State v. Foland*, 224 Or App 649, 199 P3d 362 (2008). As here, where a person has the right to refuse consent, the

> "refusal to give consent to a search undoubtedly caused the officer to have a healthy suspicion that defendant was probably in illegal possession of something; but such suspicion, however well founded, having been aroused merely on the basis of an assertion of one's constitutional rights, can play no part in creating probable cause for a search."

*State v. Gressel*, 276 Or 333, 338-39, 554 P2d 1014 (1976). To hold otherwise and "allow[ ] the police to use defendant's assertion of a privacy right as the basis for depriving him of that right would render the promise of Article I, section 9, illusory." *State v. Brown,* 110 Or App 604, 611-12, 825 P2d 282 (1992) (the defendant's belligerent demeanor and action of grabbing car keys was an assertion of the right to the privacy of the defendant's cars and not reasonable grounds to believe that the cars contained evidence of a parole violation). That principle is no less true when an assertion of a privacy right is the core fact used to justify a deprivation of that right on the basis of officer safety.

The question, then, reduces to whether defendant's action in reaching toward or into her purse, and her assertion of a privacy interest in that purse, were sufficient to threaten

---

defendant's assignment of error does not require this court to only adopt either party's legal reasoning, whether or not that analysis is correct or complete. We are not bound to make legal determinations only from among the ones supplied by the parties. Instead, our obligation is to decide the merits of the issue presented to us, consistent with our constitutional duty to administer justice "completely." Or Const, Art I, § 10.

the police officers under the *Bates* test. The majority compares the present case to the facts of *State v. Amaya*, 336 Or 616, 89 P3d 1163 (2004), reaching the conclusion that Lance's concerns for his safety were reasonable under the same logic expressed by the *Amaya* court.

In *Amaya*, an officer asked the defendant, a passenger in a vehicle stopped for a traffic violation, to step out of the vehicle. The officer encouraged the defendant to leave her purse in the vehicle; however, she took it with her and then placed it on the ground between her feet with her trench coat over the top of it. Feeling concerned for his safety, the officer questioned the defendant as to what was in her bag. She replied that "she had a gun in the bag and that she did not have a concealed weapon permit." 336 Or at 619. In light of that admission, the officers seized and searched defendant's bag. Based on the totality of the circumstances, the court concluded that the officer reasonably suspected that the defendant posed an immediate threat to his safety. *Id.* at 633.

The facts in *Amaya* are markedly different from those in this case. The stop in *Amaya* was late at night in an area known for drug dealing. The officer was alone. The police officer did not immediately seize the bag, but asked questions about its contents. The defendant attempted to conceal the bag and admitted that it contained a weapon and that she did not have a concealed weapon permit. In this case, the record shows that the setting was not risky, the area was secured by an additional police officer and a backup police car was in route, the bag was not concealed, and there was no reason to believe that it contained a weapon. The holding in *Amaya* does not support either the seizure or the search of defendant's purse.

Defendant's reaching behavior was insufficient to justify the seizure and search of her purse in this context. *Bates* is instructive. In that case, the defendant was stopped for a traffic violation late at night and in a high-crime area. There was electronic equipment in the back seat. The defendant was cooperative in producing a valid driver's license. He resisted a police demand to pull a bag out from under the driver's seat of the car and reached under the seat for an unseen object. The police seized and searched the bag. The

court found that the defendant's reaching conduct did not create a reasonable suspicion of an immediate threat of serious physical injury to the police officer:

> "Although the police are entitled to some leeway in taking protective measures, we must draw the line at some point. The facts articulated by [the police officer] in this case fall short of creating a reasonable belief that this defendant posed an immediate threat. In light of defendant's cooperative attitude, his lack of aggressive or threatening behavior and the absence of any apparent weapon, the mere possibility that he might have committed a crime and the presence of what appeared to be a bag are not sufficient."

*Bates*, 304 Or at 527. The reaching conduct in this case is no more suspicious than the defendant's behavior in *Bates*. The reach of Article I, section 9, protects defendant's otherwise aboveboard reach into her purse.[4]

For the foregoing reasons, I would hold that the trial court erred in denying defendant's motion to suppress the evidence obtained as a result of the illegal seizure of her purse. Accordingly, I respectfully dissent.

---

[4] Even if officer safety concerns justified the seizure of defendant's purse, the seizure itself was sufficient to protect officer safety. Any justification for the warrantless search of the purse must come from some other basis. However, neither the parties nor the trial court discussed the justification for the search of defendant's purse specifically, and that issue is not preserved for review. ORAP 5.45.