Argued and submitted November 3, 2009, decision of Court of Appeals and judgment of circuit court affirmed May 13, 2010

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## CAROLYN ANN MORGAN,
*Petitioner on Review.*

(CC 062638BFE; CA A134236; SC S057279)

230 P3d 928

Peter Gartlan, Chief Defender, Office of Public Defense Services, Salem, argued the cause for petitioner on review. With him on the brief was David C. Degner, Deputy Public Defender.

Susan G. Howe, Senior Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

GILLETTE, J.

## GILLETTE, J.

This is a criminal case in which defendant was convicted of unlawful possession of heroin, ORS 475.854,[1] which a police officer discovered in defendant's purse. Defendant reached into the purse after the officer indicated that he needed to search it for weapons. The officer, concerned that defendant was reaching for a weapon, seized the purse and saw drug paraphernalia inside it. The trial court refused to suppress the evidence found in the purse, and a divided panel of the Court of Appeals affirmed. We allowed defendant's petition for review and now affirm the decision of the Court of Appeals and the judgment of the trial court.

Defendant's drug arrest arose out of a legal traffic stop of a car in which defendant was a passenger. During the stop, the stopping officer, Lance, learned that the driver's license was suspended. At that point, Lance asked defendant if she had a driver's license. He did so because he could release the car to her rather than have it towed if defendant were able to submit proof of valid driving privileges. *See* ORS 809.720(3)(a) (permitting release of an impounded vehicle to person entitled to lawful possession, who submits proof of valid driving privileges). Defendant gave Lance her license, along with the car's registration and insurance card (defendant was the car's owner). Lance then contacted police dispatch and learned that defendant's license was valid but that there was an outstanding warrant for the driver's arrest. After placing the driver in the back of his patrol car, Lance returned to the car where defendant still was sitting. He handed defendant her license and told her that, because it had checked out as valid, he would not need to have the car towed. Lance then asked defendant "if [he] could look in the vehicle and make sure [he] wasn't leaving her with any contraband." Defendant gave Lance permission to search the car.

When defendant consented to the search, she still was seated in the car. She spontaneously got out, apparently

---

[1] ORS 475.854 provides:

"(1) It is unlawful for any person knowingly or intentionally to possess heroin.

"(2) Unlawful possession of heroin is a Class B felony."

to permit the search. As she did so, she picked up and took with her a large purse (also described in trial testimony as a "tote bag"), which Lance previously had seen between the front seats. Lance told defendant that, if she brought the purse with her, he would have to search it for weapons. He also told her, however, that she could just leave the purse in the car. He testified that, had she done so, he would not have searched it. ("There was no reason for me to look at it if she left it in the vehicle.")

At that point, defendant's demeanor changed from "relaxed and cordial" to "agitated and nervous." Speaking very rapidly, she gave Lance "like four reasons why [he] could not look in her bag," and, while doing so, she "clutched the bag to her chest." Lance explained to defendant that, if defendant were to leave her purse in the car, that would be satisfactory, but, if she insisted on keeping it with her, he would have to search it for weapons.[2] Defendant began backing away from Lance while shaking her head. She then reached into the purse. Lance, concerned that defendant was reaching for a weapon, seized the purse. As he did so, he looked down into the bag, which was open at the top, and observed what he recognized as drug paraphernalia in it. A subsequent search of defendant's car produced drugs and more drug paraphernalia.[3]

The present criminal case ensued. Defendant moved to suppress the evidence obtained as a result of the seizure of her purse. The trial court denied defendant's motion and made the following findings of fact, each of which is supported by the record:

"(1) Defendant * * * was a passenger in a vehicle driven by [another person].

"(2) Deputy Lance lawfully stopped the vehicle driven by [the other person].

---

[2] The fairest reading of Lance's testimony, given the trial judge's ruling, was that Lance also conveyed to defendant the fact that, if she left the purse in the car, Lance would not search it. However, Lance did not testify to having used precisely those words, and there is another basis for deciding this case. We therefore simply note the likely meaning of the testimony in the record.

[3] Defendant does not raise any separate issue respecting the officer's subsequent search of the car.

"(3)  [The other person] had a suspended license. He was arrested and placed in the [officer's] patrol vehicle.

"(4)  Deputy Lance checked to see if [defendant] had a valid license to drive the vehicle. She did. She was also the registered owner of the vehicle.

"(5)  Deputy Lance asked for and received permission from [defendant] to search the vehicle prior to releasing it to her.

"(6)  When [defendant] exited the vehicle she also took her bag. [Deputy Lance] told her he needed to look in her bag for officer safety [reasons] if she was going to keep it[,] or she could leave it in the car.

"(7)  [Defendant] clutched her bag, shook her head and backed up into the car when the deputy stated he needed to search the bag. She became more nervous upon his statement. She then reached into the bag.

"(8)  The deputy then took the bag for officer safety reasons and saw paraphernalia for drug use."

From the foregoing, the trial court concluded that the defendant had not been impermissibly seized and that the officer properly took defendant's bag from her. Defendant then entered a conditional guilty plea, ORS 135.335(3), and appealed to the Court of Appeals. A divided panel of that court affirmed. *State v. Morgan*, 226 Or App 515, 203 P3d 927 (2009). We granted defendant's petition for review.

In this court, defendant offers several alternative arguments in support of her central premise, which is that the seizure of her purse was constitutionally impermissible.[4] We address each in turn.

The arresting officer told defendant that, if she insisted on removing her purse from the car, he would have to search it. Defendant argues first that a motorist's consent to a search of her car does not automatically justify a frisk of the motorist or a search of items in her immediate possession. From this, defendant posits that the officer was claiming

---

[4] From that premise, defendant asserts that evidence derived from the search of her purse must be suppressed. The state's quarrel is with defendant's premise; it does not argue that, even if the purse were seized unlawfully, the challenged evidence nonetheless would be admissible.

(and that the state now claims) that an investigating officer at the scene of a vehicle stop may "pat[ ]down every motorist before conducting a consent search of a car, regardless of the particular circumstances of the incident."

But that is not this case. Here, the officer *did not* patdown defendant or carry out a seizure of her purse on the basis of some standard police practice. There is no question, of course, that Lance acted in a constitutionally significant way (by seizing the purse) after events led him to believe that his safety was threatened, and defendant has every right to contest what the officer actually did. But this argument is premised on speculation about what the officer *might* have done. It is not well taken.

In the Court of Appeals, the dissent opined that the officer's advice to defendant—that she must either leave her purse in the car or allow it to be searched—*itself* constituted a seizure of defendant, her purse, or both. *See Morgan*, 226 Or App at 527-28 (Sercombe, J., dissenting). Defendant urges us to adopt the dissent's view. However, our review of the record shows that the Court of Appeals' majority was correct when it asserted that no such argument ever was made to the trial court. *Id*. at 523 n 2. Thus, the argument is not entitled to consideration now.

Defendant next argues that Lance's insistence on searching defendant's purse impermissibly expanded on what defendant characterizes as her "clear intent" concerning the scope of her consent to search her car. Defendant's theory at this point is that, when Lance told defendant that he intended to search her purse if she did not leave it in the car, he somehow unilaterally expanded the scope of defendant's consent to search the car. A single answer to this argument suffices: The state does not now and has never argued that the search of defendant's purse was justified under a consent theory. That argument is not well taken.

■   Defendant next argues that her refusal to consent to a search of her purse did not give rise to either (1) reasonable suspicion to believe that she was armed and an imminent threat to the arresting officer or (2) probable cause to believe that the purse contained evidence of a crime. The second part of defendant's argument may be answered summarily: The

state has never contended that the arresting officer had probable cause to believe, before it was seized, that defendant's purse contained evidence of a crime. The matter is a non-issue. That returns us to the first part of defendant's argument, *viz.*, that the state is arguing that defendant's refusal to permit a search of her purse *itself* created reasonable suspicion that she was "armed and an imminent threat." We agree with defendant that her desire to maintain her privacy interest in the contents of her purse did not itself create a reasonable suspicion. But the crux of this case is not defendant's privacy interest in her purse; it is what her overt acts suggested that the purse contained. We turn to the parties' various positions on that subject.

Both the trial court and the Court of Appeals' majority based their rulings on the so-called "officer safety" doctrine that this court first described in *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987):

> "Upon consideration, we hold that Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officers or to others then present."

We also stated in *Bates* that, in applying the doctrine, it is not the role of the courts to "uncharitably second-guess an officer's judgment" concerning a potential threat. *Id.* All that is required, under *Bates*, is that the officer's belief be reasonable and based on specific and articulable facts. *Id.*; *see also State v. Amaya*, 336 Or 616, 631-33, 89 P3d 1163 (2004) (to same effect); *State v. Ehly*, 317 Or 66, 81-82, 854 P2d 421 (1993) (same).

In *Bates*, two officers stopped the defendant late at night as he was driving in a "high crime" area. The defendant was cooperative and did not display any hostile or aggressive behavior. However, the officers became concerned for their welfare when they noticed a partially concealed bag under the defendant's seat. The officers asked the defendant to pull the bag completely into view. He did not. Instead, he reached

down and placed his hands on the bag, and remained in the position as the officers repeatedly ordered him to pull the bag into view. After a few seconds, the officers drew their guns, ordered the defendant out of the car, and found contraband in the bag. This court ruled that, on the facts presented, the officers' actions did not come within the officer safety doctrine. 304 Or at 527-28.

Defendant argues that her actions in this case were even less threatening than those of the defendant in *Bates*. Nothing about defendant, her car, or the arrest of the driver suggested that defendant was intoxicated or involved in illegal activity. Defendant's behavior was not hostile or aggressive and she fully cooperated with Lance's requests, even to the point of agreeing to a search of her car.

Notwithstanding defendant's arguments to the contrary, some of defendant's actions, considered together, were sufficient to elevate Lance's reasonable sense of concern for his safety: Her sudden exit from her car was unexpected. Her swift change of demeanor from calm to visibly nervous for an unknown reason understandably surprised the officer. What tipped the scales, however, was *defendant's act of reaching into the purse*. Lance already had mentioned to defendant his concern about weapons. To thereafter permit defendant to reach into a capacious purse that readily could have concealed a weapon would have been folly. Once defendant began to reach into the purse, Lance could reasonably suspect that she might pose an immediate threat of serious physical injury to him, and Article I, section 9, of the Oregon Constitution did not forbid him from taking reasonable steps to protect himself—including seizing the purse. *See Amaya*, 336 Or at 619 (officer's question about contents of bag that woman was trying to conceal was based on reasonable suspicion that woman posed immediate threat and did not violate Article I, section 9); *Ehly*, 317 Or at 81-83 (officers developed reasonable suspicion that motel tenant was searching for gun in duffel bag and could constitutionally search bag under officer safety doctrine). Defendant's argument to the contrary is not well taken.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.