Submitted August 31, 2011, affirmed August 29, 2012, petition for review denied March 7, 2013 (353 Or 410)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD MAZZUCCHI,
*Defendant-Appellant.*

Jackson County Circuit Court
092318FE; A143973

284 P3d 1263

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Douglas F. Zier, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

Defendant appeals a judgment of conviction for possession of methamphetamine, ORS 475.894. He assigns error to the trial court's denial of his motion to suppress evidence obtained after he consented to a search while subject to what he contends was an unlawful seizure. We conclude that defendant was not stopped for purposes of Article I, section 9, of the Oregon Constitution when the officers requested his consent to search the car. We therefore affirm.

We state the facts consistently with the trial court's express and implied findings where there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Officer Jeter stopped a car for speeding. He approached the front passenger side of the car, where defendant was seated, and asked the driver, Riley, for her license, registration, and insurance. Riley told Jeter that the car belonged to defendant's father and that she did not have a driver's license. Riley then gave Jeter her Washington State identification card. Jeter noticed that Riley was very shaky, was "over the top nervous," and had a bad complexion for her age and decaying teeth.

Jeter told defendant that, if he wanted to drive the car away, he could give Jeter his driver's license and Jeter would "check [to] see if it's valid." Defendant gave Jeter his license and Jeter initiated DMV, criminal history, and warrants checks on both Riley and defendant.

While waiting for the results of the records checks, Jeter asked Riley to step out of the car, which she did. He also told defendant that he could move over into the driver's seat, which he did. Jeter asked Riley about her criminal history, and she told him that she had previously been arrested for DUII and failure to appear. Riley continued to act "very anxious." Jeter asked her when she had last used methamphetamine, and she told him that it had been about a year. Jeter then returned Riley to the passenger seat of the car.

As Jeter began writing Riley a ticket for speeding and driving without a driver's license, her records check came back showing that her Washington license was suspended and that she also had prior drug arrests. At that point, based

on his training and experience with methamphetamine users, Jeter believed that he had reasonable suspicion that Riley was involved with drug use. Shortly thereafter, another officer, Chambers, arrived at the scene. Jeter asked Riley to step back out of the car, and asked her why she was not being truthful about her prior arrests. Riley became upset and started to cry. Jeter asked for permission to search the car, but Riley stated that it was not her car. Jeter told her that she could consent to a search of her belongings within the car, and she signed a form consenting to a search of a black suitcase.

During that conversation, defendant remained seated in the car's driver seat. After presenting the consent form to Riley, Jeter also handed an identical form to Chambers, who handed the form to defendant and asked him to read it. Defendant signed the consent form without asking any questions or hesitating. About 15 minutes had passed since the traffic stop was initiated. At some point before signing the consent form, defendant's license had been returned to him.

Having obtained permission to search the car, Chambers asked defendant to step out of the car, patted him down, took him to stand near Jeter's patrol car with Jeter and Riley, and proceeded to search the car and its contents. Inside another black suitcase, Chambers found two glass pipes with methamphetamine residue on them. Defendant told Jeter that the pipes were his, and was later charged with possession of methamphetamine.

Before trial, defendant moved to suppress the evidence seized by the officers on the ground that it was obtained as the result of an illegal seizure. The court found that the officers had reasonable suspicion and consent to get into the car because of Riley, and that defendant was free to go before he gave his own voluntary consent to search the car. The court noted that defendant was not handcuffed or questioned about his own criminal activity or drug use. Ultimately, the court determined that defendant had given valid voluntary consent to search the car, and denied the motion to suppress. Defendant appealed after a conditional guilty plea.

On appeal, defendant reasserts the arguments that he made to the trial court in support of his motion to suppress. He contends that he was illegally seized under Article I, section 9, by one or more of the officers' actions: (1) taking defendant's license for the purpose of running a records check, (2) running the records check on defendant, or (3) after defendant's records check came back clear, asking for permission to search the car instead of telling him that he was free to go. Defendant contends that the evidence against him was discovered as a result of the officers' illegal conduct, and should, therefore, be suppressed.

The state responds that defendant was not illegally seized at any time during the encounter and that, even if he was, the search was attenuated from any illegality by defendant's voluntary consent. We agree with the state that defendant was not illegally seized either when his license was retained for a records check or when he gave his voluntary consent to a search of the car.

We begin by addressing defendant's first two assertions: that he was illegally seized when Jeter took his license in order to run a records check on him or by the running of the records check itself. We have previously held that the request for and brief retention of a passenger's driver's license for a records check, for the purpose of determining if the passenger can lawfully drive away the vehicle, does not rise to the level of a seizure under Article I, section 9. *See State v. Morgan*, 226 Or App 515, 519, 203 P3d 927, *aff'd*, 348 Or 283, 230 P3d 928 (2010) (holding that such action is for a noncriminal investigative purpose and does not rise to the level of a seizure). Likewise here, Jeter's request for and retention of defendant's license to perform a records check did not constitute a seizure under Article I, section 9.

We next address defendant's assertion that he was unconstitutionally seized when, after his records check came back clear and his license was returned to him, the officers asked him for permission to search the car. If he was unconstitutionally seized, then, he asserts, any evidence discovered as a result of the officers' unlawful conduct must be suppressed.

A stop occurs in violation of Article I, section 9, "(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances would believe that (a) above has occurred." *State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010) (footnote omitted; emphasis omitted). The analysis requires a fact-specific inquiry into the totality of the circumstances of each particular case. *State v. Holmes*, 311 Or 400, 408, 813 P2d 28 (1991).

Defendant argues that, after his records check came back clear, the officers should have told him that he was free to leave and should have ceased questioning him. In support of that contention, he cites the Supreme Court's statement in *State v. Rodgers/Kirkeby*, 347 Or 610, 624, 227 P3d 695 (2010), that

> "[p]olice conduct during a noncriminal traffic stop does not further implicate Article I, section 9, so long as the detention is limited and the police conduct is reasonably related to the investigation of the noncriminal traffic violation. However, a police search of an individual or a vehicle during the investigation of a noncriminal traffic violation, without probable cause and either a warrant or an exception to the warrant requirement, violates Article I, section 9."

However, *Rodgers/Kirkeby* also establishes that a police inquiry does not, by itself, constitute a seizure under Article I, section 9 without physical restraint or a show of authority that restricts an individual's freedom of movement. *Id.* at 622. In *Holmes*, the court explained that "mere conversation" or a "non-coercive encounter" between an officer and a citizen that involves no restraint of liberty requires no justification. 311 Or at 407. Accordingly, under the framework established by *Holmes*, *Rodgers/Kirkeby*, and *Ashbaugh*, the question is whether a reasonable person in defendant's circumstances would have believed that his liberty or freedom of movement was being restricted when Jeter asked for his consent to search the car.

Here, there is no evidence that the officers acted coercively toward defendant. Defendant was asked for consent to search only after Riley stated that she did not possess such authority. Although the record does not reveal precisely when officers returned defendant's license, it does support the trial court's finding that the license was returned at some point before the request was made. Whether or not defendant was unlawfully stopped between the time the records check came back clear and the return of his license, the stop ended upon the return of the license, and there is no evidence either that the officers acted after that point as if defendant was under investigation or that the retention of defendant's license caused defendant to consent to the subsequent search of the car.

The officers' failure to tell defendant that he was free to leave does not constitute a seizure without some show of authority that restricted his freedom of movement. *See State v. Smith*, 247 Or App 624, 628-29, 270 P3d 382 (2012) (the defendant, a passenger, was not seized even though the officers did not tell him he was free to leave, because there was no evidence that the officers had weapons drawn, raised their voices, or stood in a way that would make the defendant feel that he was surrounded). Although a reasonable person might choose not to leave the scene while his companion is still being subjected to police questioning, it does not necessarily follow that a reasonable person would not feel free to do so under the circumstances presented here. In the absence of physical restraint or a show of authority, any discussion that the officers had with defendant after his license was returned to him can be characterized as "mere conversation" that does not require justification.

This case is like *Morgan*. There, as in this case, an officer ran a records check on a passenger for the purpose of letting her drive the car away. After the check came back clear and the passenger's license was returned to her, the officer obtained permission to search the car and ultimately found heroin in the passenger's purse. 226 Or App at 517. As part of its analysis, we concluded that a request for

consent to search a vehicle following the lawful retention of the defendant's driver license would not necessarily cause a reasonable person to believe that her liberty or freedom of movement was being restrained. *Id.* at 520-21. In determining that the request for consent to search was lawful, we relied on the fact that it was not coercive, noting that,

> "[u]nder the 'seizure' standards of Article I, section 9, 'law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification if a particular encounter proves fruitful.'"

*Id.* at 520 (quoting *Holmes*, 311 Or at 410). Similarly, here, there is no evidence that defendant was coerced into giving his permission to search the car. After the return of his license, he was not handcuffed or otherwise physically restrained, or questioned about criminal activity or drug use. Chambers presented the consent form to defendant, and he signed it without question or comment.

Under all the circumstances, we conclude that defendant was not stopped for purposes of Article I, section 9, when the request for consent to search the car was made. Therefore, defendant's voluntary consent to search the car, which led to the discovery of the evidence at issue, was not a result of unlawful conduct by the officers. It follows that the trial court did not err by denying defendant's motion to suppress.

Affirmed.