Argued and submitted September 5, 1990, the decision of the Court of Appeals and the judgment of the circuit court reversed and case remanded to circuit court for further proceedings May 30, 1991

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## MICHAEL LAWRENCE HOLMES,
*Respondent on Review.*

(TC CR89-87, M89-69; CA A60910; SC S37239)

813 P2d 28

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Glenn M. Feest, Beaverton, argued the cause for respondent on review.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

UNIS, J.

## UNIS, J.

This is yet another case in which this court is called on to decide whether police action constitutes a "seizure" of a person within the meaning of Article I, section 9, of the Oregon Constitution[1] and the Fourth Amendment to the Constitution of the United States.[2] Specifically, the issue is: Does a law enforcement officer who positions himself about one-half mile from a motor vehicle accident and who stops a motorist on a public highway for the purpose of advising the motorist of a detour around the accident "seize" the person of the motorist within the meaning of those constitutional provisions? We answer "no."

### FACTS

While assisting in the nighttime investigation of a fatal motor vehicle accident that completely blocked travel on a bridge on Highway 197 near the town of Dufur, Wasco County, Deputy Sheriff Achziger set up a detour at the north end of the bridge to reroute southbound traffic around the accident scene. Achziger laid out a pattern of flares on the highway north of the bridge and positioned his patrol car, with its overhead lights flashing, behind the flares. Achziger, who was wearing his uniform with a badge displayed on it and holding a flashlight, then stationed himself in the center of the southbound lane, about one-half mile from the accident, in order to divert traffic onto a road that went through Dufur and rejoined Highway 197 at a point south of the accident site. Motorists approaching Achziger could see the accident scene behind him, as well as several emergency vehicles with overhead lights flashing.[3]

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[2] The Fourth Amendment to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[3] Defendant testified that he saw the accident scene, which he described as being "lit up like a Christmas tree."

Before encountering defendant, Achziger stopped about one dozen vehicles, advised the drivers of the accident ahead and rerouted them around the accident scene. When defendant's automobile neared him, Achziger pointed a flashlight beam at the vehicle and motioned with his free hand for defendant to stop. Instead of stopping his car where Achziger stood, as the previous motorists had done, defendant drove past Achziger and stopped about two or three feet beyond him. As Achziger took a step toward defendant's automobile, it rolled another two or three feet from him and then stopped. At that time, Achziger had no reason to suspect that defendant had violated any law and had observed no other unusual driving.

When Achziger reached the driver's side of defendant's car, the window on the driver's side was down. Shining his flashlight into defendant's car, Achziger spoke with defendant, explaining that, because of the accident on the bridge, defendant would have to detour through Dufur. When defendant responded, Achziger detected a strong odor of alcohol on defendant's breath. Achziger observed that defendant's eyes appeared to be bloodshot, his eyelids were "sleepy" or not fully open, his face was flushed, and his speech was slurred. Achziger asked defendant whether he had anything to drink that evening. Defendant stated he had a couple of beers. Achziger then asked defendant to step out of his car and advised defendant of his constitutional rights. After defendant performed field sobriety tests, Achziger arrested him for driving under the influence of intoxicants. ORS 813.010.

Before trial, defendant moved to suppress all evidence obtained following Achziger's stop of him in his vehicle, asserting that the stop constituted an unreasonable "seizure" of his person in violation of both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the Constitution of the United States. The trial court granted defendant's motion. Unable to find any "specific grant of authority to the sheriff to direct traffic at the scene of an accident," the trial court concluded that Achziger's stopping of defendant in his vehicle constituted an unreasonable "seizure" of defendant's person under Article I, section 9, of the Oregon Constitution and, therefore, suppressed evidence gained as a result of such "seizure." The state appealed. The Court of Appeals affirmed without opinion. *State v. Holmes,* 101 Or App 676, 791 P2d 867 (1990). We reverse the decision of the Court of Appeals and the

judgment of the circuit court, and remand this case to the circuit court for further proceedings.

## I. SUBCONSTITUTIONAL ANALYSIS

Before reaching defendant's state and federal constitutional claims, we first examine whether the deputy sheriff acted lawfully under proper authorization by a politically accountable lawmaker.[4]

■ Article VI, section 8, of the Oregon Constitution provides that every county sheriff shall "perform such duties, as may be prescribed by law."[5] ORS 206.010 provides that the sheriff is the "conservator of the peace of the county." That statute sets forth the general duties that a sheriff shall perform.[6] As used in the Oregon Vehicle

---

[4]

"We often have stressed the need to examine statutory authority and the limitations imposed by that authority before reaching any constitutional questions." *Nelson v. Lane County,* 304 Or 97, 102 n 2, 743 P2d 692 (1987) (plurality opinion).

The phrase "politically accountable lawmaker" is taken from *Nelson v. Lane County, id.* at 105, where this court stated: "Authority for administrative searches may be, and often is, provided by politically accountable lawmakers." *See also State v. Atkinson,* 298 Or 1, 6, 688 P2d 832 (1984) (phrase "politically accountable officials" used).

Potential sources of proper authorization by politically accountable lawmakers would include, for example, a statute enacted by the Oregon Legislature or by the electorate through the initiative or referendum process, a regulation based on a statute, a city or county charter provision, a city or county ordinance, or a policy or procedure promulgated pursuant to authority.

[5] Article VII (original), section 16, of the Oregon Constitution, provided:

"A sheriff shall be elected in each County for the term of Two years, who shall be the ministerial officer of the Circuit, and County Courts, and shall perform such other duties as may be prescribed by law."

[6] ORS 206.010 provides:

"The sheriff is the chief executive officer and conservator of the peace of the county. In the execution of the office of sheriff, it is the sheriff's duty to:

"(1) Arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses.

"(2) Defend the county against those who, by riot or otherwise, endanger the public peace or safety.

"(3) Execute the process and orders of the courts of justice or of judicial officers, when delivered to the sheriff for that purpose, according to law.

"(4) Execute all warrants delivered to the sheriff for that purpose by other public officers, according to law.

"(5) Attend, upon call, the Supreme Court, Court of Appeals, Oregon Tax Court, circuit court, district court, justice court or county court held within the county, and to obey its lawful orders or directions."

Code,[7] "police officer" includes a sheriff or a deputy sheriff, ORS 801.395, except where the context of a statute requires otherwise. ORS 801.100. Various provisions of the Oregon Vehicle Code vest a police officer with certain authority to enforce its provisions.[8] In "attempting to enforce" Oregon traffic laws, a police officer "shall be in uniform or shall conspicuously display an official identification card showing the officer's lawful authority." ORS 810.400.

The authority of a police officer to direct, control or regulate traffic at or near the scene of an accident and to require a person operating a motor vehicle to stop is established by certain provisions of the Oregon Vehicle Code. ORS 811.540[9] requires a person operating a motor vehicle to bring his or her vehicle to a stop if given a visual or audible signal to do so by a police officer who is in uniform and prominently displaying the police officer's badge of office. A driver of a motor vehicle is required by ORS 801.510[10] to stop, even

---

[7] The Oregon Vehicle Code is contained in ORS Chapters 801 to 822. ORS 801.010.

[8] A police officer has authority to arrest or issue a citation to a person for a traffic crime. ORS 810.410(1). A police officer also has authority to issue a citation to a person for a traffic infraction committed in his or her presence. ORS 810.410(2). A police officer is authorized to "stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issue of citation." ORS 810.410(3)(b). *See also* ORS 133.310 which authorizes a peace officer to make warrantless arrests based on probable cause to believe a person has committed any of certain crimes or offenses.

[9] ORS 811.540 provides:

"(1) A person commits the crime of fleeing or attempting to elude a police officer if:

"(a) The person is operating a motor vehicle;

"(b) A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren; and

"(c) The person knowingly flees or attempts to elude a pursuing police officer.

"(2) The offense described in this section, fleeing or attempting to elude a police officer, is a Class A misdemeanor and is applicable upon any premises open to the public."

[10] ORS 801.510 provides:

" 'Stop' means the following:

"(1) When required, it means the complete cessation from movement.

"(2) When prohibited, it means any halting even momentarily of a vehicle, whether occupied or not, except when necessary to avoid conflict with other

though otherwise prohibited by Oregon statute,[11] if directed to do so by a police officer. A driver of a motor vehicle is required by ORS 811.535[12] to obey "any lawful order, signal or direction of a police officer who has lawful authority to direct, control or regulate traffic."

Deputy Sheriff Achziger, who was wearing his uniform with a badge displayed on it, therefore, was authorized by a politically accountable lawmaker to stop defendant and advise defendant of the accident ahead and the need to detour through Dufur.[13]

## II. OREGON CONSTITUTIONAL ANALYSIS

Our next inquiry is whether Deputy Sheriff Achziger's actions concerning defendant violated defendant's rights under Article I, section 9, of the Oregon Constitution.[14] To answer that question, we first must decide whether Achziger's stopping of defendant for the purpose of advising him of a detour due to an accident constituted a "seizure" of a person within the meaning of Article I, section 9.

There potentially is an infinite variety of encounters between law enforcement officers and citizens. Not every such encounter constitutes a "seizure" of the citizen within

---

traffic, or in compliance with the directions of a police officer or traffic control device."

[11] ORS 811.550 establishes certain places where stopping, standing and parking a vehicle generally are prohibited. A person may stop, stand, or park a vehicle at certain of those prohibited places (e.g., on a bridge, ORS 811.550(9), on a throughway, ORS 811.550(12)), however, if "acting * * * at the direction of a police officer * * *." ORS 811.560(6). For the definition of "throughway," see ORS 801.535.

[12] ORS 811.535 provides:

"(1) A person commits the offense of failing to obey a police officer if the person refuses or fails to comply with any lawful order, signal or direction of a police officer who:

"(a) Is displaying the police officer's star or badge; and

"(b) Has lawful authority to direct, control or regulate traffic.

"(2) The offense described in this section, failing to obey a police officer, is a Class C traffic infraction."

[13] Because in this case we find that the deputy's action was authorized by a politically accountable lawmaker to stop defendant and advise him of the accident and detour, we express no opinion as to what result would follow if the deputy's action was not so authorized.

[14] *Supra* note 1.

the meaning of Article I, section 9. Encounters may range from friendly exchanges of pleasantries or mutually helpful information to hostile confrontations of armed persons involving arrests, injuries, or even loss of life. Some encounters begin in a friendly, voluntary, noncoercive atmosphere, but take a different direction upon the injection of some unexpected element into the encounter.

In many cases it is clear that a person has been "seized." But there are many instances in which it is less obvious whether a police-citizen encounter is a "seizure."

This court previously has identified three categories of encounters along the continuum of meetings between law enforcement officers and citizens and has indicated whether those encounters constitute a "seizure" of a person under Article I, section 9, of the Oregon Constitution: First, a police-citizen encounter without any restraint of liberty (*e.g.,* mere conversation, a non-coercive encounter) is not a "seizure" and, therefore, requires no justification. *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978). Second, a "seizure" of a person occurs when a police officer temporarily restrains a person's liberty (a "stop" under ORS 131.605(5)), justified by reasonable suspicion of the citizen's criminal activity.[15] *State v. Kennedy,* 290 Or 493, 498, 624 P2d 99 (1981); *State v. Warner, supra,* 284 Or at 161. Third, a "seizure" of a person occurs upon an arrest, justified by probable cause to believe that the person arrested has committed a crime.[16] *State v. Warner, supra.*

The three categories (no-seizure encounter for which no justification is required, stop on reasonable suspicion, and an arrest for probable cause) represent a graduation of permissible police authority with respect to encounters with citizens and directly correlate the degree of required justifiable belief with the permissible scope of interference. The three categories are guidelines only. They are neither exhaustive nor conclusive as to what police action is a "seizure" of a

---

[15] *See* ORS 131.605 through ORS 131.625 (stopping of persons by police officers) and ORS 161.605(4) (defining the phrase "reasonably suspects").

[16] *See State v. Owens,* 302 Or 196, 204, 729 P2d 524 (1986), for the meaning of probable cause to arrest under Article I, section 9, of the Oregon Constitution. *See also* ORS 131.005(11) for statutory definition of probable cause to arrest.

person. For example, a termination of a person's life by a police officer would constitute a "seizure" under Article I, section 9, of the Oregon Constitution.[17]

■ Given the diversity of potential police-citizen encounters and that the facts and circumstances of each encounter may be so varied, the determination of whether a person has been seized under Article I, section 9, and, if so, at what point in the encounter, will require a fact-specific inquiry into the totality of the circumstances of the particular case.

This court made such an inquiry in *State v. Warner, supra,* and *State v. Painter,* 296 Or 422, 676 P2d 309 (1984). Both *Warner* and *Painter* illustrate the distinction between an encounter that intrudes upon no constitutionally protected interest and an intrusion amounting to a "seizure" of the person.[18]

In *State v. Warner, supra,* two police officers followed the defendants into a bar after receiving a report about a robbery. One of the officers left to look at the automobile in which the two defendants had arrived. The defendants then walked out the front door of the bar. The officer approached the men and asked them to return to the bar. When the men went back inside, the officer asked the defendants to remove their wallets, take out their identification, and place it on the table in front of them. Apparently, the identification was retained by the officer, and the defendants were asked to accompany the officer outside to the police car for warrant checks. The defendants eventually were arrested and charged with robbery. The court held that the officer had seized the

---

[17] The same is true under the Fourth Amendment to the federal constitution. *See Tennessee v. Garner,* 475 US 1, 105 S Ct 1694, 85 L Ed 2d 1 (1985) (police officer's fatal shooting of a fleeing suspect is a "seizure" under the Fourth Amendment).

[18] *State v. Warner,* 284 Or 147, 585 P2d 681 (1978), and *State v. Painter,* 296 Or 422, 676 P2d 309 (1984), examined the validity of police-citizen encounters under ORS 131.615, which provides that a police officer may stop a person who the police officer "reasonably suspects * * * has committed a crime" and "make a reasonable inquiry." Despite the inapplicability of that statute to this case, a discussion of *Warner* and *Painter* is appropriate because this court has stated that a "stop," as used in ORS 131.615 and defined in ORS 131.605(5) as "a temporary restraint of the person's liberty by a peace officer lawfully present in any place[,]" is a "seizure" under Article I, section 9, of the Oregon Constitution and the federal constitution's Fourth Amendment. *State v. Kennedy,* 290 Or 493, 497, 624 P2d 99 (1981).

defendants when the officer asked the defendants to place their identification on the table. *Id.* at 165.

*State v. Painter, supra,* involved a deputy sheriff who was on vehicle patrol. He saw the defendant walking in an alley at 3 a.m. and asked him what he was doing. The defendant responded that he had car trouble and was looking for a telephone. The officer requested identification. The defendant produced an expired driver license and several credit cards, all of which were retained by the officer. After running a radio check on the defendant, the officer returned the documents. Based on information given to him by the defendant, the officer then located the defendant's vehicle, shined his flashlight into the interior and saw a pistol under the front seat. He waited until the defendant returned to the vehicle and drove away, then arrested him for driving while suspended and for carrying a concealed weapon. The court held that the officer seized the defendant when the officer retained the defendant's license and credit cards because at that point defendant was "unable to leave." *Id.* at 425.

■ The holdings in *Warner* and *Painter* demonstrate that law enforcement officers may approach persons on the street or in public places, question them, and even accompany them to another location without the encounter necessarily constituting a "seizure" of a person under Article I, section 9.

In *State v. Warner, supra,* 284 Or at 161, this court stated that a "[s]eizure of a person [under Article I, section 9, of the Oregon Constitution] *includes* arrest, investigatory detention, or any other detention of a person against [that person's] will." (Emphasis added.) In making that statement, this court did not purport to set forth a comprehensive test for determining an Article I, section 9 "seizure" of a person. We now find that a clearer and more complete statement by this court as to what constitutes a "seizure" of a person under Article I, section 9 would be useful.

■ We hold that a "seizure" of a person occurs under Article I, section 9, of the Oregon Constitution (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever

an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances.[19]

We recognize that this test will seem rather vague when unadorned by judicial interpretation based upon specific fact situations, as would be the "reasonable suspicion" test for temporary detention or the "reasonable grounds to believe" test for arrest, or, for that matter, the "probable cause" requirement of both Article I, section 9, and the Fourth Amendment. We do not expect that these seizure-of-person standards that serve as a starting point for analysis will, from their inception, provide a ready answer for every conceivable fact situation that may arise in this complex area of the law. Nevertheless, we believe that the "seizure" standards we set forth today can be understood and applied by the police.

■■ Under these "seizure" standards, law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification if a particular encounter proves fruitful. A street or public place encounter does not amount to an Article I, section 9 "seizure" merely because the encounter may involve inconvenience or annoyance for the citizen and the other party to the encounter is known to be a law enforcement officer. Even physical contact does not transform the encounter into a "seizure" if it is a normal means of attracting a person's attention (*e.g.,* policeman tapping citizen on the shoulder at the outset to get a citizen's attention). *See* LaFave, 3 Search and Seizure, A Treatise on the Fourth Amendment 413, § 9.2(h) (2d ed 1987). Rather, the encounter is a "seizure" of a person only if the officer engages in conduct significantly beyond that accepted in ordinary social intercourse. The pivotal factor is whether the officer, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner that would be perceived as a nonoffensive contact if it had occurred between two ordinary citizens. *See id.*

---

[19] Any test intended to determine what constitutes a seizure of a person must be expressed in terms that can be understood and applied by the officer. The "objectively reasonable" requirement in part (b) of our formulation furthers that purpose. An officer should only be responsible for anticipating the effects of his action on an objectively reasonable person, *i.e.,* the officer must be able to treat the individual with whom he is dealing as an objectively reasonable person.

■ Under the same reasoning, police-motorist encounters, like pedestrian encounters, are not *per se* "seizures." It would be anomalous to guarantee a motorist greater freedom of movement than is afforded a pedestrian. *See Illinois Migrant Council v. Pilliod,* 398 F Supp 882, 898 (ND Ill 1975), *aff'd* 540 F2d 1062 (7th Cir 1976).

■ Applying the above-stated principles to Deputy Sheriff Achziger's actions in this case, we conclude that defendant was not "seized" within the meaning of Article I, section 9, of the Oregon Constitution when Achziger stopped the vehicle in which defendant was driving to advise him that, because of an accident, the highway ahead was closed and that an alternate route was necessary.

The officer's initial encounter with defendant in stopping his vehicle and imparting information did not *significantly* restrict, interfere with, or otherwise deprive defendant of his liberty or freedom of movement. As defendant's vehicle approached Achziger, who was signaling him to stop, defendant could see the accident scene ahead, which, as we previously stated, he described as being "lit up like a Christmas tree." Seeing an officer directing or stopping traffic because of a motor vehicle accident is a common experience. No psychologically intimidating environment had been created. In imparting the information about the road closure and the detour, Achziger did not question defendant, request any identification, make any threats or draw any weapons. The intrusion was tailored in direction and manner to be insignificantly intrusive.

A reasonable motorist in the circumstances of this case would believe that the stopping of defendant in his vehicle was nothing more than a brief encounter resulting in an insignificant intrusion. We believe that a reasonable motorist in the circumstances of this case would expect some delay or interruption in his or her travel. Although possibly annoyed or inconvenienced with the turn of events, a reasonable motorist would appreciate being advised of what was happening and that an alternate route was available. We conclude that under the circumstances a reasonable motorist would *not* believe that the officer's conduct *significantly* restricted, interfered with, or otherwise deprived defendant of defendant's liberty or freedom of movement.

Accordingly, no "seizure" of defendant's person occurred in the Oregon constitutional sense when the officer stopped defendant's automobile to advise him of the accident and detour.

■ During the non-seizure police-motorist encounter, Deputy Achziger perceived evidence sufficient to cause him to reasonably suspect[20] that defendant was driving under the influence of intoxicants. ORS 813.010. At that point in the encounter, Deputy Achziger was entitled to temporarily restrain defendant's liberty (a "stop," according to ORS 131.605(5) and 131.615, a "seizure" under Article I, section 9). Investigation during the temporary detention gave Achziger probable cause to arrest[21] defendant for driving under the influence of intoxicants. Accordingly, Deputy Achziger's actions concerning defendant did not violate defendant's rights under Article I, section 9, of the Oregon Constitution.

## III. FEDERAL FOURTH AMENDMENT CONSTITUTIONAL ANALYSIS

Our next inquiry is whether Achziger's actions concerning defendant violated defendant's rights under the Fourth Amendment to the federal constitution.

To answer that question, we first must determine whether Achziger's conduct in stopping the vehicle in which defendant was driving under all of the circumstances of that incident constituted a "seizure" of defendant's person under the Fourth Amendment.

The Supreme Court of the United States in recent years has articulated various tests to determine whether a Fourth Amendment "seizure" of a person has occurred. That court has stated that "seizure" of a person occurs whenever there is a "meaningful interference, however brief, with an individual's freedom of movement[,]" *United States v. Jacobsen,* 466 US 109, 113 n 5, 104 S Ct 1652, 80 L Ed 2d 85

---

[20] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

[21] *See supra* note 16.

(1984); "only when there is a governmental termination of freedom of movement through means intentionally applied[,]" *Brower v. Inyo County,* 489 US 593, 597, 109 S Ct 1378, 103 L Ed 2d 628 (1989); "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen[,]" *Michigan v. Chesternut,* 486 US 567, 573, 108 S Ct 1975, 100 L Ed 2d 565 (1988); and "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 US 544, 554, 100 S Ct 1870, 64 L Ed 2d 497 (1980) (opinion by Stewart, J.); *Michigan v. Chesternut, supra; INS v. Delgado,* 466 US 210, 215, 104 S Ct 1758, 80 L Ed 2d 247 (1984).

■ In *California v. Hodari D.,* 499 US ___, 111 S Ct 1547, 113 L Ed 2d 690 (1991), the Supreme Court explained the last stated test, formulated by Justice Stewart in *Mendenhall* and adopted by the court in *Chesternut* and *Delgado,* by saying that it did not state the entire test for a "seizure" of a person by a non-forcible "show of authority." In other words, the requirement that a reasonable person would not have felt free to leave is a *"necessary"* condition for a "seizure" of a person but not a *"sufficient"* one where no force is used. 111 S Ct at 1551. In *Hodari D.,* the court said: "The word 'seizure' readily bears the meaning of laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *Id.* at 1550.[22]

■ The Supreme Court recognizes that not all encounters between law enforcement officers and citizens constitute a "seizure," *see id.,* and that any assessment as to whether police conduct amounts to a "seizure" of a person implicating the Fourth Amendment must take into account all of the circumstances surrounding the incident in each individual case. *See id.* at 1551.

---

[22] In *Brower v. Inyo County,* 489 US 593, 596, 109 S Ct 1378, 103 L Ed 2d 628 (1989), the United States Supreme Court, *in dictum,* stated that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control."

According to Justices Kennedy and Scalia, "[a] Fourth Amendment seizure occurs when an individual remains in the *control* of law enforcement officials because he reasonably believes, on the basis of their conduct toward him, that he is not free to go." *Michigan v. Chesternut,* 486 US 567, 577, 108 S Ct 1975, 100 L Ed 2d 565 (1988) (emphasis added) (Kennedy and Scalia, JJ., concurring).

■ Applying the above-stated Fourth Amendment principles to the facts in this case, we conclude that no Fourth Amendment "seizure" of defendant's person resulted when defendant stopped his vehicle in compliance with the deputy's signal. Defendant was "seized," however, when the officer asked him to step out of the car and perform sobriety tests. At that time, as previously stated, the officer had reason to suspect defendant was driving under the influence of intoxicants and defendant had submitted to the assertion of authority.

Our reasons for concluding that defendant was not "seized" for Fourth Amendment purposes when he stopped in compliance with Achziger's signal are in many ways similar to those we expressed in our analysis of the "seizure" issue under Article I, section 9, of the Oregon Constitution. Deputy Achziger did not *meaningfully* deprive defendant of his liberty or freedom of movement when he caused defendant to stop his vehicle. As previously stated, Achziger merely wanted to impart information to defendant to enable him to continue his journey without further delay. The intrusion was an incidental effect of lawful police conduct, *i.e.*, an officer lawfully directing traffic at a scene of a motor vehicle accident. Until Achziger perceived sufficient indicia of inebriation to give him reason to suspect defendant was driving under the influence of intoxicants, defendant was free to leave. We conclude that in view of all the circumstances surrounding the initial encounter, a reasonable person would have believed at that time that he was free to continue his travels. Further investigation gave Deputy Achziger probable cause to arrest defendant for driving under the influence of intoxicants. Accordingly, defendant's Fourth Amendment rights were not violated.

In sum, because defendant was not "seized" under either Article I, section 9, of the Oregon Constitution, or the federal constitution's Fourth Amendment, during his initial encounter with Deputy Achziger, we conclude that the trial court erred in granting defendant's motion to suppress.

The decision of the Court of Appeals and the judgment of the circuit court are reversed, and this case is remanded to the circuit court for further proceedings.