Argued and submitted June 23, vacated and remanded October 28, petition for
review withdrawn December 16, 2009 (347 Or 447)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## NOREEN JEAN BILLINGS,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF060498; A136390

220 P3d 65

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Robert M. Atkinson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Edmonds, Presiding Judge, and Sercombe, Judge, and Carson, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals a judgment of conviction for possession of a controlled substance, ORS 475.894, and assigns error to the denial of her motion to suppress evidence of controlled substances obtained after she consented to the search of her purse and statements made to officers after the search. We reverse.

According to the trial court's findings, a state trooper and a City of Pendleton detective were assisting probation officers with the execution of a search warrant at a known drug house when they saw a car drive slowly by the location. The detective recognized the driver of the car as a person involved in drug activity in the area. In an unmarked police car, without activating any lights or a siren, the detective and the trooper followed the car for several blocks. The driver parked the car in the driveway of a residence. The officers parked their car across the street and approached the other vehicle. The driver got out of the car to speak to the detective. The trooper walked up to the passenger side of the car where defendant was seated and engaged her in conversation while she remained seated in the vehicle.

The trooper testified that, during the conversation, he asked defendant for her identification. The detective called defendant's identification into dispatch while the trooper conversed with her. When the trooper asked for consent to search her purse, which was lying on the floor of the vehicle at her feet, defendant asked the officer why he was asking to search her purse. The officer explained to defendant that the person she was riding with had a known history of methamphetamine use and that the car she was in had been seen driving slowly past a house where the police were executing a search warrant for narcotics. Eventually, after the trooper had asked for consent to search her purse multiple times, defendant consented. The subsequent search of the purse produced the evidence that defendant contends should have been suppressed.[1]

---

[1] The trooper also testified that defendant did not refuse to speak to him or ask to get out of the car before she gave her consent to the search. The trial court found that when the trooper approached defendant, he asked her if she would be willing

■ The threshold issue is whether the trooper's questions to defendant under the above-stated circumstances operated to illegally restrain her freedom or liberty of movement under Article I, section 9, of the Oregon Constitution.[2] Defendant argues that a reasonable person would understand that his or her freedom of movement was being restrained under the above-stated circumstances because, in conversing with her, the officer positioned himself in a manner so that she could not easily get out of the car, conveyed to her his suspicion that she was connected to the house at which the search warrant had been executed, requested her identification, and repeatedly asked for consent to search her purse. The state responds that the trooper "did not force defendant to do anything." In its view, the officer's answers to defendant's questions about why he wanted to search her purse were not accusatory in tone or nature, and there is no evidence that defendant was aware that the officers were conducting a check for outstanding warrants when they procured her identification. The state contends that, under the totality of the circumstances, there was no illegal restraint on defendant's freedom of movement.

■ A deprivation of a person's liberty of movement under Article I, section 9, occurs when (a) a law enforcement officer intentionally and significantly restricts or interferes with that person's liberty or freedom of movement, or (b) a person believes that his or her liberty of movement has been restrained and that belief is objectively reasonable under the circumstances. *State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991). As noted above, defendant contends that a reasonable person in her position would have believed that she had been stopped. Thus, we begin our analysis with the objective component of the *Holmes* part (b) inquiry.

In *State v. Anderson*, 231 Or App 198, 217 P3d 1133 (2009), this court addressed circumstances similar to those presented here. In that case, two individuals approached an apartment where officers were executing a search warrant

to stay in the car and that, under the totality of the circumstances, the trooper did not act in a confrontational way or in any way coerce defendant into giving her consent to the search.

[2] The state does not contend that the stop was justified by reasonable suspicion.

and then returned to their vehicle. Two officers immediately left the apartment and spoke with the individuals, one of whom was the defendant, who was seated in the passenger seat of the vehicle. One officer told the driver that he was contacting her because they had approached the apartment while officers were executing a search warrant and they " 'wanted to find out who they were, what interest they might have had with what we were doing there, or maybe they knew the individuals that—or individual that lived there at the apartment.' " 231 Or App at 201 (quoting the testimony of the officer). The officers then asked the driver and the defendant for their identification. This court concluded that, under the circumstances, the defendant's belief, if he indeed held a subjective belief that his liberty of movement was interfered with by the officers' questions, would have been "eminently reasonable." *Id.* at 203.

The result in this case is governed by our holding in *Anderson*, in which we held that the defendant could have reasonably believed that his liberty had been significantly restrained when he was asked for his identification. *Id.* If anything, the circumstances in this case are more restrictive than those presented in *Anderson*. Defendant was not only asked for her identification, she was subjected to repeated requests for her consent to allow the trooper to search her purse while the officer reiterated his suspicions regarding her being in the company of a known user of controlled substances and their appearance at a known drug house that was being searched. *See, e.g., State v. Toevs*, 327 Or 525, 536-37, 964 P2d 1007 (1998) (holding that continuing requests for consent to search, among other factors, constituted conduct that was significantly beyond that accepted in ordinary social intercourse). We conclude, therefore, that defendant's belief that the officer unlawfully interfered with her liberty of movement in obtaining her consent to the search of her purse was a reasonable one, if defendant in fact held a subjective belief that she was not free to leave.

■ Here, defendant testified regarding her subjective belief: "I felt like I was being arrested * * * [b]ecause I couldn't leave." The trial court, however, did not make any finding as to whether defendant actually held that subjective belief. Accordingly, we must remand to the trial court for

such a finding, unless the state has demonstrated that defendant's consent to search was independent of any prior illegality. In *State v. Hall*, 339 Or 7, 27, 115 P3d 908 (2005), the court observed that there must be a minimal factual nexus between unlawful police conduct and a defendant's consent to a search to mandate the suppression of seized evidence. Further, even when a defendant's consent is voluntary and not coerced by the police, the consent is insufficient to establish the admissibility of evidence from a warrantless search if the state cannot prove that consent was independent of or only tenuously related to any preceding violation of the defendant's rights under Article I, section 9. *Id.* Here, defendant demonstrated a minimal factual nexus between the unlawful conduct of the trooper and her consent. The state, therefore, had the burden of proving that defendant's consent was independent of or only tenuously related to the prior illegality. The state did not to carry that burden based on the facts presented in this case.

Additionally, defendant's subsequent incriminating admissions to the officers without *Miranda* warnings after the discovery of controlled substances in her possession are also derivative of her illegal detention and therefore should have been suppressed. Defendant's remaining assignments of error do not warrant discussion.

Vacated and remanded.