Submitted on remand from the Oregon Supreme Court March 22, reversed and
remanded September 21, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHERYL DIANE SINGER,
*Defendant-Appellant.*

Jackson County Circuit Court
072595FE; A138767

262 P3d 1172

Meredith Allen, Senior Deputy Public Defender, Peter
Gartlan, Chief Defender, Appellate Division, Office of Public
Defense Services, for appellant.

Robert M. Atkinson, Assistant Attorney General, John R.
Kroger, Attorney General, Jerome Lidz, Solicitor General,
and Anna M. Joyce, Assistant Attorney General, for
respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

This case is on remand from the Supreme Court, which vacated our prior decision, *State v. Singer*, 230 Or App 485, 216 P3d 897 (2009) (*Singer I*), and remanded the case to us for reconsideration in light of *State v. Ashbaugh*, 349 Or 297, 244 P3d 360 (2010). *State v. Singer*, 349 Or 663, 249 P3d 1281 (2011) (*Singer II*). In *Singer I*, we applied the analysis from *State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991), and concluded that it was objectively reasonable for defendant to have believed that her liberty had been significantly restricted when a police officer asked her for identifying information and used the information to run a warrant check. Whether the restriction constituted a stop under Article I, section 9, of the Oregon Constitution turned on whether defendant had, in fact, believed that her liberty had been restricted. Because the trial court had not addressed that issue, we remanded the case to the trial court to do so. *Singer I*, 230 Or App at 487.

In *Ashbaugh*, the Supreme Court adopted the following test for a seizure under Article I, section 9, in place of the *Holmes* test that we had applied in *Singer I*:

> "A 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution: (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred."

349 Or at 316 (emphasis in original). Our task on remand is to determine whether, under that test, defendant was seized during her encounter with the police. We conclude that she was and, accordingly, reverse and remand.

Defendant was a front-seat passenger in a car whose driver made an unlawful turn. Officer Kirkpatrick saw the driver make the turn, and he stopped the driver for the traffic violation by activating the overhead lights on his patrol car, which remained lit throughout the ensuing encounter. Once stopped, Kirkpatrick approached the driver, obtained the driver's license, and advised him of the reason for the stop.

While Kirkpatrick did that, he noticed that defendant appeared to be nervous. He asked defendant for her name and date of birth in order to determine if there were any outstanding warrants for her arrest, but he did not tell defendant the reason for the request. After defendant had given him the requested information, Kirkpatrick returned to his patrol car to run a warrant check on the driver and defendant. By that time, another uniformed officer had arrived to act as a cover officer.

The warrant check disclosed no outstanding warrants but did show that defendant was on probation for a conviction for a drug-related crime. Rather than proceeding to address the traffic violation that was the basis for the stop of the driver, Kirkpatrick returned to the passenger side of the stopped car and asked defendant to step out of the car. As defendant got out of the car, she placed her purse underneath the passenger seat. Kirkpatrick told defendant that he knew that she was on probation for a drug offense, and he asked her to remove the sunglasses that she was wearing. She complied, which allowed Kirkpatrick to see that her pupils were unduly constricted, leading him to conclude that she was under the influence of intoxicants.

Kirkpatrick asked defendant for consent to search her person for illegal drugs, and she agreed. Kirkpatrick searched defendant's pockets and wallet and found no drugs. He then asked to search her purse. Defendant hesitated but ultimately retrieved her purse and handed it to Kirkpatrick after Kirkpatrick asked her if she had a search clause as a term of her probation. After giving her purse to Kirkpatrick, defendant warned him that there was a "rig" in it, which Kirkpatrick understood to refer to a hypodermic needle used to inject drugs.

In searching the purse, Kirkpatrick found a sunglass case that contained a syringe with a brown liquid in it and a compact that contained a spoon covered with a brown residue and a piece of cotton covered with a brown substance. Defendant admitted that the syringe contained heroin and that the spoon was paraphernalia used to prepare and inject heroin. Kirkpatrick then arrested defendant for possession of a controlled substance.

Before trial, defendant moved to suppress all of the evidence obtained from her on the ground that it had been obtained as a result of her unlawful seizure by Kirkpatrick. The trial court denied the motion, and defendant entered a conditional guilty plea to unlawful possession of heroin, ORS 475.854, reserving her right on appeal to obtain review of the court's denial of her suppression motion.

We conclude that Kirkpatrick's conduct toward defendant would lead a reasonable person in defendant's position to believe that she was the subject of a criminal investigation and, hence, that Kirkpatrick had seized defendant for purposes of Article I, section 9, before he requested consent to search her and her purse. Although the record does not establish that defendant knew that Kirkpatrick had requested her name and date of birth in order to run a warrant check on her, Kirkpatrick's actions after completing the check would reasonably lead defendant to believe that she was the subject of an investigation. Rather than returning from the warrant check to speak with the driver, whose unlawful turn had led to the stop, Kirkpatrick went to the passenger side of the stopped car and asked defendant to get out of the car, which she did. Kirkpatrick then told her that he knew that she was on probation for a drug offense and asked her to remove her sunglasses, which she also did. Those actions by Kirkpatrick constituted a show of authority that would lead a reasonable person in defendant's position to believe that Kirkpatrick had significantly restricted her freedom of movement. Therefore, under the test articulated in *Ashbaugh*, Kirkpatrick had seized defendant for purposes of Article I, section 9, before he asked her for consent to search her and her purse.

The state does not contend that Kirkpatrick had a lawful basis to stop defendant, nor that the evidence that he obtained from her was the attenuated product of an unlawful seizure, and we see no basis in this record to reach either conclusion. It follows that the trial court erred in denying defendant's suppression motion.

Reversed and remanded.