Argued and submitted August 20, 2013, affirmed May 29, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS J. CAMPBELL,
aka Thomas Jay Campbell,
*Defendant-Appellant.*

Multnomah County Circuit Court
110646093; A149656

327 P3d 1188

Alice Newlin-Cushing, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Erin Snyder, Deputy Public Defender, Office of Public Defense Services.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

## DE MUNIZ, S. J.

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine.[1] ORS 475.894. He assigns error to the trial court's denial of his motion to suppress evidence. We affirm.

Two Portland Police Officers, Yakots and Hettman, observed defendant standing in front of a park bench in an area of downtown Portland that they associated with drug activity. Defendant appeared disheveled. He was going through items in a book bag, which lay open on a park bench. Some of defendant's personal items were spread out on the bench.

Yakots and Hettman parked their patrol car near defendant, got out, and approached him. Yakots said, "Hey, how are you doing? What's going on?" then, "Hey, do you have anything on you you're not supposed to have?" Defendant replied that he did not. While Yakots and defendant were speaking, Hettman obtained defendant's identifying information and returned to his patrol car to run a warrant check. Yakots then asked defendant, "Are you sure? Do you mind if I search?" Defendant said, "No, go ahead."

Yakots prepared to search defendant, telling defendant to put his hands on top of his head. Defendant complied. However, before Yakots could inventory defendant's pants pockets, Yakots noticed a clear tube with an orange cap of the sort used to store hypodermic needles sticking out of the front pocket of defendant's book bag. Defendant saw Yakots looking into his book bag and lunged for the bag. Yakots pushed the bag away and ordered defendant to put his hands back on top of his head. Defendant continued to reach for the bag. Yakots ordered defendant to stop, and defendant swung at Yakots with a closed fist.

Hettman returned from the patrol car and helped Yakots bring defendant to the ground and handcuff him. Yakots then provided defendant with *Miranda* warnings and asked, "What the heck's going on? Why are we in this

---

[1] Defendant was also convicted in the same proceeding of attempted assault of a public safety officer, ORS 163.208 and ORS 161.405. However, defendant does not assign error to that conviction.

position that we're in now?" Defendant looked to his bag and said, "Because I have those." The officers found two needles in defendant's bag, one of which tested positive for methamphetamine.

The state charged defendant with attempted assault of a public safety officer, ORS 163.208 and ORS 161.405, resisting arrest, ORS 162.315, attempted escape in the second degree, ORS 162.155, and ORS 161.405 and unlawful possession of methamphetamine, ORS 475.894.

Before trial, defendant moved to suppress all physical evidence and any of defendant's statements in response to the officers' discovery of the physical evidence. Defendant argued that the officers had seized him without reasonable suspicion, in violation of Article I, section 9, of the Oregon Constitution, when they obtained his identification for the purpose of running a warrant check. According to defendant, the officers' observation of the needles in his book bag, the search of the bag and seizure of its contents, and defendant's statements to the officers were the product of police illegality. The trial court concluded that defendant had not been "stopped" for the purpose of Article I, section 9, and denied defendant's motion. A jury found defendant guilty of attempted assault on a public safety officer and unlawful possession of methamphetamine, but not guilty of the remaining charges.

On appeal, defendant renews his argument that police seized him without reasonable suspicion in violation of Article I, section 9. Defendant argues that the seizure occurred when Hettman obtained defendant's identifying information, which happened before Yakots asked for defendant's permission to search, and before Yakots began the search and observed the contraband sticking out of the front pocket of defendant's book bag.

In response, the state argues that the encounter did not become a seizure when Hettman obtained defendant's identifying information. According to the state, even if the police had seized defendant without reasonable suspicion, defendant's voluntary consent to the search served to attenuate the products of the search from any police illegality. In light of the Supreme Court's recent decision in *State*

*v. Backstrand,* 354 Or 392, 399, 313 P3d 1084 (2013), we conclude that defendant was not "seized" for purposes of Article I, section 9. Consequently, we do not reach the attenuation issue.

In *Backstrand,* the Supreme Court surveyed the law of seizure under Article I, section 9.[2] The analysis in *Backstrand* begins with the declaration that each interaction between police and citizens is unique. *Id.* at 399. Consequently, the inquiry into the nature of an interaction is fact specific and requires an examination of the totality of the circumstances. *Id.* (citing *State v. Holmes,* 311 Or 400, 408, 813 P2d 28 (1991)). Despite the potentially infinite variety of interactions, typically, police-citizen interactions fall into one of three categories. *Id.* The least intrusive category, mere encounter, unlike a stop or an arrest, is not a seizure under Article I, section 9, and requires no justification. *Id.*

Whether a police-citizen interaction rises beyond a mere encounter to the level of a seizure under Article I, section 9, depends on whether a reasonable person would believe that an officer has intentionally and significantly restricted, interfered with, or otherwise deprived a citizen of his or her liberty or freedom of movement. *Id.* (citing *State v. Ashbaugh,* 349 Or 297, 244 P3d 360 (2010)).

According to *Backstrand,* individuals feel differing degrees of comfort or discomfort while interacting with police officers. Consequently, for police to seize an individual under Article I, section 9, an individual must have an objectively reasonable perception that police are exercising coercive authority. *Id.* at 400-01.

*Backstrand* also posits that requests for identification are commonplace in individuals' daily lives, as is briefly tendering identification during private interactions and during interactions with the government. *Id.* at 408. Under the court's reasoning in *Backstrand,* a police officer's

---

[2] *Backstrand* is part of trio of Supreme Court opinions issued on the same day discussing search and seizure under Article I, section 9. Along with *Backstrand,* the Court also decided *State v. Highley,* 354 Or 459, 313 P3d 1068 (2013) (discussing the implications of a check to confirm probation status during a police-citizen encounter), and *State v. Anderson,* 354 Or 440, 313 P3d 1113 (2013) (analyzing indicia of police authority during a police-citizen interaction).

request for identifying information, or even formal identification, without something more, is not a coercive show of authority, and consequently, does not lead to a reasonable belief that an individual's liberty is significantly restricted. *Id.* at 412. However, other circumstances, in addition to an officer's request for identification and an individual's compliance, may create a reasonable belief that an individual's liberty is significantly restricted. An individual's awareness that the officer is using the individual's identification to run a warrant check is among the circumstances that may contribute to a reasonable belief that an individual's liberty is significantly restricted. *Id.* at 411-12 (discussing *State v. Hall*, 339 Or 7, 115 P3d 908 (2005)).

Applying *Backstrand*, we agree with the state that officers did not seize defendant when Hettman requested defendant's identifying information. Hettman and Yakots approached defendant in a public space. They addressed defendant in a conversational tone consistent with the task of gathering information and cooperation from a member of the public. Because, under *Backstrand*, a request and tender of identification does not, in itself, transform a police-citizen encounter into a seizure, and because the officers did not engage in any show of coercive authority to garner either defendant's cooperation or his identifying information, defendant was not seized.

As noted, an individual's awareness that officers are using his or her identification to run a warrant check is among the circumstances that may transform a tender of identification to police into a seizure. Here, however, nothing in the record establishes that defendant was aware that Hettman was running a warrant check. The police did not seize defendant for purposes of Article I, section 9, and the trial court did not err in denying defendant's motion to suppress.

Affirmed.