Argued and submitted April 26, reversed and remanded October 25, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHELLE NAOMI WINTER,
*Defendant-Appellant.*
Crook County Circuit Court
20CR16062; A176083

538 P3d 1228

Defendant entered a conditional guilty plea of no contest to the charge of unlawful possession of methamphetamine. On appeal, defendant assigns error to the trial court's denial of her motion to suppress evidence. Defendant argues that evidence of methamphetamine was discovered after an unlawful stop in violation of Article I, section 9, of the Oregon Constitution. *Held*: The Court of Appeals concluded that defendant was unlawfully stopped when a police officer hailed defendant from the street, inquired about her drug use, and asked if she had "anything on her." A reasonable person in defendant's position would have believed that their liberty was restricted and that they were not free to leave the encounter. Because the stop occurred before the officer had reasonable suspicion, it was unlawful. Thus, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

Annette C. Hillman, Judge.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Anna Belais, Deputy Public Defender, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed and remanded.

## PAGÁN, J.

Defendant entered a conditional guilty plea of no contest to the charge of unlawful possession of methamphetamine under ORS 475.894 (2020).[1] On appeal, defendant assigns error to the trial court's denial of her motion to suppress evidence. Defendant argues that evidence of methamphetamine was discovered after an unlawful stop in violation of Article I, section 9, of the Oregon Constitution. For the reasons that follow, we agree that defendant was unlawfully stopped, and that the trial court erred in denying defendant's motion. Accordingly, we reverse and remand.

We review the denial of a defendant's motion to suppress for legal error and are bound by the trial court's findings of historical fact if the evidence in the record supports them. *State v. Prouty*, 312 Or App 495, 496, 492 P3d 734 (2021). The relevant facts are undisputed.

On February 17, 2020, Detective Yanes was on patrol in Prineville, Oregon when he saw defendant in front of a house talking with another woman. Yanes recognized both individuals and had knowledge that they were drug users. As he drove by the house, Yanes observed defendant end the conversation and begin walking alone, down the street. Yanes turned around, parked his patrol car, and initiated contact with defendant, asking her "how she was doing, because [he] hadn't seen her in a while." He did not turn on the overhead lights on his car or block defendant's path.

Yanes began questioning defendant about what she was doing with the other woman and why they went separate ways when they saw Yanes drive by. Defendant replied that it was because she was dropping off her clothes and it was time for her to leave. Yanes then asked defendant if she was staying clean. Defendant admitted she was not staying clean because she "was a drug addict." Yanes asked if she had anything on her person and she said she had two needles with her, a "dirty one" and a "clean one."

Yanes asked if he could search defendant's bag, and if she would put her bag on the hood of his patrol car. As

---

[1] ORS 475.894 (2020), was subsequently amended in 2021. *See* Or Laws 2021, ch 2, § 17; Or Laws 2021, ch 591, § 39.

defendant placed her bag on the hood, she grabbed a zippered pouch and tentatively said, "So I have to show you these?" Yanes replied, "Well I am asking you to show me and so far, you have been pretty truthful and honest." Defendant reached inside the zippered pouch and revealed two hypodermic needles.

Yanes again asked defendant if he could search her bag, and she said yes. Yanes searched through defendant's bag and continued to ask her questions about her drug use. When Yanes inquired if she had anything additional inside her bag, defendant initially said no, but then admitted that inside one of the pouches was a clear container with methamphetamine residue. Yanes read her a *Miranda* warning and located the plastic container. The container later tested positive for methamphetamine.

The state charged defendant with one count of unlawful possession of methamphetamine. Defendant moved to suppress the evidence, arguing that she had been stopped without reasonable suspicion in violation of Article I, section 9, of the Oregon Constitution and that the drug evidence was collected as a result that unlawful seizure. Specifically, defendant argued that Yanes had stopped her when he hailed her from the street, did not tell her she was free to leave, and immediately and repeatedly asked her about her drug use. The trial court denied the motion, concluding that defendant's initial contact with Yanes was a "mere encounter" and not an unlawful seizure. The court further stated that the encounter escalated to a stop when Yanes told defendant to place her purse on his patrol car, but defendant's statement that she was carrying two needles was sufficient for reasonable suspicion. Finally, the court concluded that the state had "proven by a preponderance of the evidence that *** [d]efendant's consent to search her bags was voluntary."

On appeal, defendant reiterates the argument that Yanes stopped her without reasonable suspicion when he asked about her drug use and whether she had "anything on her." In the alternative, defendant argues that Yanes lacked reasonable suspicion to stop her when he asked her to place her bag on the car. The state argues that Yanes did not seize

defendant until he asked her to place her bag on the hood of his car, at which point he had reasonable suspicion that she was involved in criminal activity.

Article I, section 9, of the Oregon Constitution protects against unreasonable searches and seizures. Encounters between law enforcement officers and citizens typically fall into one of three categories depending on the "'degree of intrusiveness on a citizen's liberty [and] the degree of justification required for the intrusion.'" *State v. Backstrand*, 354 Or 392, 399, 313 P3d 1084 (2013) (quoting *State v. Fair*, 353 Or 588, 593, 302 P3d 417 (2013)). At one end of the spectrum are mere encounters which do not require justification from law enforcement. *Id*. At the other end are arrests, which require probable cause. *Id*. In the middle are temporary detentions—often termed "stops"—which generally require reasonable suspicion. *Id*. Both arrests and stops are seizures that are distinguished from mere encounters by an "'imposition, either by physical force or through some "show of authority," of some restraint on the individual's liberty.'" *Id*. (quoting *State v. Ashbaugh*, 349 Or 297, 309, 244 P3d 360 (2010)).

"For purposes of Article I, section 9, a seizure occurs when (1) a law enforcement officer intentionally and significantly interferes with an individual's liberty or freedom of movement; or (2) a reasonable person, under the totality of the circumstances, would believe that his or her liberty or freedom of movement has been significantly restricted." *State v. Reyes-Herrera*, 369 Or 54, 58, 500 P3d 1 (2021). The law enforcement officer's show of authority must be "something more than just asking a question, requesting information, or seeking an individual's cooperation." *Backstrand*, 354 Or at 403. The "something more" is a fact-specific inquiry, requiring "an examination of the totality of the circumstances involved." *Id*. at 399.

In general, "'law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification if a particular encounter proves fruitful.'" *Id*. at 400 (quoting *State v. Holmes*, 311

Or 400, 410, 813 P2d 28 (1991)). However, a seizure occurs when an officer conveys to a person through words, actions, or both, that the person is not permitted to end the encounter. *Id.* at 401. If an officer makes a stop without reasonable suspicion, the stop is unlawful, and any evidence discovered as a result of the unlawful stop is assumed contaminated and must be suppressed. *State v. Newton*, 286 Or App 274, 288-89, 398 P3d 390 (2017).

With the above legal principles in mind, we turn to the present case. The state contends that this case is like *Ashbaugh*, 349 Or 297, and *State v. Anderson*, 354 Or 440, 313 P3d 1113 (2013). The state argues that Yanes's initial interaction with defendant was noninvestigative and conveyed merely his interest in "defendant's condition." We disagree.

First, this case is factually distinguishable from *Ashbaugh*, 349 Or 297. In *Ashbaugh*, an officer arrested the defendant's husband and then approached the defendant to tell her that her husband had requested that she take his belongings with her. 349 Or at 301. During that conversation, the officer asked if she had anything illegal in her purse. *Id.* at 302. After the defendant said that she did not, the officer asked to search her purse. *Id.* The court determined that the defendant was not seized because no threatening or coercive physical action accompanied the officer's request, and the conversation was relaxed and nonconfrontational. *Id.* at 317.

Here, Yanes approached defendant and did not articulate a noninvestigative reason for contacting her. Instead, Yanes altered his direction of travel to question defendant, asked what she was doing with the other woman, asked her whether she was clean, and "if she had anything on her person." Yanes's actions and questions conveyed that defendant was his investigative target.

Second, Yanes's interest in "defendant's condition" is unlike *Anderson*, 354 Or 440. In *Anderson*, the explanation of the officers' reasons for contacting the defendant "objectively conveyed possible suspicion that the driver and [the] defendant could be involved in criminal activity ***

but they equally conveyed that the officers were interested in whatever information the [defendant] might be able to provide." 354 Or 440 at 453. In contrast, Yanes did not ask defendant about her "current condition" merely to get a better understanding of the circumstances. Rather, Yanes asked if defendant was staying clean and then immediately followed up by asking if she had anything on her. This conveys that Yanes was not inquiring about defendant's health, but that he was investigating a crime—specifically the possession of a controlled substance.

In reaching our conclusion, *Reyes-Herrera*, 369 Or 54, is particularly instructive. In *Reyes-Herrera*, the investigating officer was driving his patrol car by an alleyway and observed the defendant walking away from another man. *Id.* at 56. Believing the men had engaged in a drug transaction, the officer, without turning on his lights, parked his car, and approached the defendant. *Id.* After telling the defendant he was not in trouble and was free to leave, the officer said that he had just observed the defendant and the other man "'face to face'" and asked, "'Like did you buy drugs from this guy[?]'" *Id.* After the defendant twice answered, "'no,'" the officer asked to search him. *Id.* at 57. The defendant agreed, and drugs were found. *Id.*

On review, the Oregon Supreme Court held that a reasonable person in the defendant's position would have believed that their liberty was restricted, and that the defendant was, therefore, seized. *Id.* at 67-68. The officer did not convey a noninvestigative purpose for confronting the defendant. *Id.* at 66. Rather, the officer "told [the] defendant that he had seen [the] defendant walk away from a conversation with a man who was counting money and asked if he had purchased drugs from that man." *Id.* This exchange implied that the officer suspected the defendant of criminal activity, and that the defendant must remain where he was. *Id.* Additionally, the officer suspected a possible "drug deal," questioned the defendant to investigate that suspicion, and asked questions implying that the defendant was in trouble and was not free to leave. *Id.* That implication was further compounded when the defendant denied being in possession of drugs, but the officer still asked for consent to search him. *Id.* at 66-67.

Notably, in *Reyes-Herrera*, the defendant was considered to have been stopped even though the officer's questions did not directly accuse the defendant of criminal activity. *Id.* at 61-62. Rather, "the line between relaxed conversation and coercive questioning depends on whether a court determines that an officer made a declarative statement or asked a question, or whether the officer's comments fit the textbook definition of an accusation." *Id.*

Here, Yanes saw defendant speaking with another person and became suspicious when they parted ways. Yanes knew defendant and had knowledge that she previously used drugs. Like the officer in *Reyes-Herrera*, Yanes did not communicate to defendant that he had a noninvestigative purpose for approaching her, nor did he ask for her cooperation. Instead, Yanes asked why defendant and the other woman separated when they saw him and then asked defendant if she was "staying clean" (*i.e.*, not using drugs) and if she had anything (*i.e.*, drugs or drug paraphernalia) on her. Yanes quickly transitioned from asking about whether defendant was staying clean to signaling his suspicion that she was engaged in criminal activity.

Accordingly, under the totality of the circumstances, defendant was stopped when Yanes hailed defendant from the street, inquired about her drug use, and asked if she had "anything on her." A reasonable person in defendant's position would have believed that their liberty was restricted and that they were not free to leave the encounter. Because the stop occurred before Yanes had reasonable suspicion, it was unlawful. *Reyes-Herrera*, 369 Or at 67-68. Thus, we conclude that the trial court erred in denying the motion to suppress.[2]

Reversed and remanded.

---

[2] Based on our conclusion that the defendant was unlawfully seized, we do not address or analyze defendant's alternative argument that Yanes lacked reasonable suspicion to stop her when he asked her to place her bag on his car.