Argued and submitted May 28, 2009, affirmed March 31, petition for review denied
July 29, 2010 (348 Or 621)

## STATE OF OREGON,
*Plaintiff-Respondent,*

. *v.*

## KEVIN C. DENEEN,
*Defendant-Appellant.*

Multnomah County Circuit Court
070431763; A137496

228 P3d 680

Mary M. Reese, Deputy Public Defender, argued the cause
for appellant. With her on the brief was Peter Gartlan, Chief

Defender, Appellate Division, Office of Public Defense Services.

Katherine H. Waldo, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

ORTEGA, J.

## ORTEGA, J.

Defendant appeals from a judgment of conviction of unlawful possession of methamphetamine, ORS 475.894. He assigns error to the denial of his motion to suppress evidence and argues that the evidence was discovered as the result of an unlawful stop. We affirm.

The facts are undisputed. While driving a marked patrol car, Portland Police Officer Gandy saw defendant riding a bicycle. The time was about 9:00 p.m., and defendant had no lights on. Gandy drove next to defendant and yelled out of his car window that defendant needed to have lights.[1] He asked for defendant's name and, from that information, quickly checked records and learned that defendant previously had been arrested for a methamphetamine-related offense. Gandy could not recall whether he told defendant to wait during the records check, but, in any event, defendant waited.

Gandy chose not to issue a citation for the traffic violation and told defendant that he was free to go. Gandy did not stand in front of defendant or otherwise restrict his movements, nor did Gandy activate his patrol car's siren or overhead lights. He spoke with defendant in a low-key, casual tone.

Defendant got on his bicycle and began to pedal away. When defendant had gone "[n]ot too far, not a block away," Gandy asked "if I could speak with him again. And he said, 'Okay.'" Gandy walked over to defendant. Gandy told defendant that the area had a high rate of drug crime and then asked defendant why he appeared nervous. Defendant replied that he had a marijuana pipe on his person. Gandy then told defendant that "it's likely that he had more than just the marijuana pipe on him, and [defendant] pulled out a bag of meth out of his front left pants pocket." Gandy seized the methamphetamine as evidence and transported defendant to jail.

---

[1] ORS 815.280 provides that riding a bicycle without required lighting equipment is a Class D traffic violation.

Defendant was charged with unlawful possession of methamphetamine. Before trial, he moved to suppress the evidence seized by Gandy. The trial court denied that motion, concluding that defendant felt free to go when he began to pedal away and that the subsequent contact between defendant and Gandy was not an extension of the earlier stop but instead was mere conversation. After a stipulated facts trial, defendant was found guilty.

Defendant appeals and assigns error to the denial of his motion to suppress. He contends that the evidence of his possession of methamphetamine was obtained through exploitation of a stop that violated the state and federal constitutions. Although defendant concedes that the initial traffic stop, based on the lack of required lights, was lawful, he contends that Gandy's request to "speak to him again" constituted either an unlawful extension of the stop or an unlawful second stop under Article I, section 9, of the Oregon Constitution. In his view, under the circumstances, a reasonable person would assume that the police officer had changed his mind about letting the person go and was instead using his authority to conduct a narcotics investigation. Defendant also argues that, under the Fourth Amendment to the United States Constitution, he was detained when Gandy asked to speak to him again because a reasonable person would believe that compliance with that request was required.

The state responds that the initial stop ended when Gandy told defendant that he was free to go. The state contends that the request to speak again, which came after a break that allowed defendant to pedal some distance away from Gandy, was not the sort of exercise of police authority that would cause a reasonable person to believe that he was stopped.

■    We agree with the state that Gandy did not stop defendant by asking to speak with him again. We begin with basic principles:

> "A person is 'seized' under Article I, section 9, when either (1) a police officer intentionally and significantly interferes with the person's freedom of movement; or (2) the person believes, in an objectively reasonable manner, that his or her liberty of movement has been so restricted. [*State*

> *v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991).] That determination requires a 'fact-specific inquiry into the totality of the circumstances of the particular case.' *Id*. at 408."

*State v. Rodgers/Kirkeby*, 347 Or 610, 621-22, 227 P3d 695 (2010). As the court explained in *Holmes*, "[t]he pivotal factor is whether the officer, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner that would be perceived as a nonoffensive contact if it had occurred between two ordinary citizens." 311 Or at 410 (citation omitted).

In defendant's view, the circumstances in this case are comparable to those in *State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998). In *Toevs*, the Supreme Court concluded that a reasonable person in the defendant's position could believe that he was detained where, immediately after an officer told the defendant that he was free to go, that officer requested consent to search his vehicle. The officer responded to the defendant's refusal with repeated requests for consent and questions about drug possession; when that officer could not obtain a consent to search, a second officer began questioning the defendant and asking for consent. The court concluded that "the officers' continuous show of police authority constituted conduct that was 'significantly beyond that accepted in ordinary social intercourse.' *Holmes*, 311 Or at 410. Therefore, through that conduct, they continued to detain defendant." *Toevs*, 327 at 536-37 (citation omitted). *See also State v. Alvarez*, 234 Or App 544, 550-51, 228 P3d 683 (2010) (concluding that the defendant was stopped where, immediately after ending a lawful traffic stop and telling the defendant that he was free to go, the officer asked for consent to search the defendant's car and a second officer then took over, told the defendant that he looked suspicious and was in a high-crime area, and again asked for consent to search).

■ Here, however, Gandy's request to speak with defendant did not involve a continuous show of authority of the type that occurred in *Toevs*. In contrast to the officers' immediate and repeated requests for consent to search in *Toevs*, Gandy's conversation with defendant was low-key and

casual. After defendant began pedaling away at the conclusion of the traffic stop, Gandy asked if he could speak with defendant again, a request that would be perceived as non-offensive conduct if it occurred between ordinary citizens. The previous stop for a traffic violation does not change that analysis: Gandy had said that defendant was free to go at the conclusion of that stop, and Gandy's subsequent conduct did not negate that statement.

The conversation that followed Gandy's request to speak with defendant again was similar to that in *State v. Bretches*, 225 Or App 602, 604, 202 P3d 883, *rev den*, 346 Or 361 (2009). There, the defendant had been stopped for traffic infractions. After being told that he was free to go, the defendant stood and continued to converse with the police officer. During that conversation, the officer asked if the defendant had anything illegal, and the defendant acknowledged possessing marijuana and consented to a search of his person and his truck. *Id.* Rejecting the defendant's argument that he had been illegally stopped, we explained that, despite the lack of a break between the statement that the defendant was free to go and the continuation of the conversation, other factors weighed against the existence of a stop. *Id.* at 608. The defendant was questioned by only one officer, not in a tag-team fashion, and did not face immediate and repeated requests for consent to search that would prevent him from driving away. We emphasized that the defendant "was not subjected to multiple requests to search, never refused consent, and, when asked, never denied that he had drugs on him" and that the officer did not engage in physical conduct that would unlawfully effect or extend a traffic stop. *Id.* at 609.

Here, likewise, defendant was questioned by only one officer, Gandy, who did not engage in any physical control over defendant's movements or press defendant with repeated requests for consent to a search. When Gandy observed that defendant appeared nervous and asked for a reason, Gandy engaged defendant in mere conversation. At that point, the circumstances did not support an objectively reasonable belief that defendant was not free to go, and he was not stopped for purposes of Article I, section 9. When defendant responded that he had a marijuana pipe, that

statement gave Gandy reasonable suspicion of criminal activity, thus justifying the subsequent interaction, even if that interaction was itself a stop (a conclusion we need not and do not reach). The trial court did not err by denying defendant's motion to suppress.

We reject defendant's argument under the Fourth Amendment for the same reasons. *See United States v. Drayton*, 536 US 194, 200-01, 122 S Ct 2105, 153 L Ed 2d 242 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. * * * If a reasonable person would feel free to terminate the encounter, then he or she has not been seized.").

Affirmed.