Submitted on remand from the Oregon Supreme Court March 31, reversed and remanded July 2, 2014

### STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

### JUAN JOSE ZAMORA-MARTINEZ,
*Defendant-Appellant.*

Washington County Circuit Court
C051006CR; A129382

331 P3d 1023

Peter Gartlan, Chief Defender, and Stephanie J. Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent. Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the supplemental brief.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

This case is on remand from the Oregon Supreme Court, which vacated our prior decision, *State v. Zamora-Martinez*, 244 Or App 213, 260 P3d 603 (2011) (*Zamora-Martinez II*),[1] and remanded for reconsideration in light of *State v. Backstrand*, 354 Or 392, 313 P3d 1084 (2013); *State v. Highley*, 354 Or 459, 313 P3d 1068 (2013); and *State v. Anderson*, 354 Or 440, 313 P3d 1113 (2013). *State v. Zamora-Martinez*, 354 Or 837, 325 P3d 738 (2014). In *Zamora-Martinez II*, we concluded that the trial court erred in denying defendant's motion to suppress evidence because, under *State v. Ashbaugh*, 349 Or 297, 244 P3d 360 (2010), a reasonable person would have concluded, under the circumstances presented here, that he was the subject of an investigation and was not free to leave. *Zamora-Martinez II*, 244 Or App at 220. After our decision, the Supreme Court issued *Backstrand, Highley,* and *Anderson,* and we are now called upon to examine whether, under those cases, defendant's encounter with law enforcement amounted to an illegal stop under Article I, section 9, of the Oregon Constitution. Because we conclude that a reasonable person would have felt significantly restrained by the officer's request for additional identification, we reverse and remand.

We take the facts and pertinent procedural history from *Zamora-Martinez II*:

"[U.S. Immigration and Customs Enforcement (ICE) Senior Special Agent Billison] accompanied Hillsboro narcotics officers as they executed a search warrant at defendant's sister's residence. Although execution of the warrant was undertaken primarily by the narcotics officers, Billison was present to deal with any immigration-related issues. Forged immigration and Social Security documents were discovered during the search and, as a result, Billison detained some of the persons in the residence for immigration violations. Hillsboro police arrested others on drug charges. Ultimately, all of the adults in the residence were taken into custody.

---

[1] Before issuing *Zamora-Martinez II*, we had issued another opinion in this case that was vacated and remanded for reconsideration in light of *State v. Ashbaugh*, 349 Or 297, 244 P3d 360 (2010). *State v. Zamora-Martinez*, 229 Or App 397, 211 P3d 349 (2009) (*Zamora-Martinez I*), *vac'd and rem'd*, 349 Or 664, 249 P3d 1282 (2011).

"Because there were several minors at the residence who would have been left without adult supervision, Billison telephoned their mother—defendant's sister—and asked her to return to the residence to care for her daughters. Defendant arrived at the residence 10 to 15 minutes later, and Billison testified that it appeared as though defendant's arrival was related to Billison's telephone call.

"When defendant arrived, he was approached by the Hillsboro officers, who asked why he was present. After learning that defendant was there to take custody of the children, the officers called Billison, who had been inside the residence, to defendant's location. [At that point, in addition to Billison, there were approximately five officers outside the residence, a few officers going through another residence, and two or three officers at the corner of the property.] Billison, who was in plain clothes but wearing a badge, introduced himself to defendant, identified himself as an ICE agent, and asked to see defendant's identification. Defendant produced an Oregon identification card. Billison looked at the card and then asked defendant where he was from. After defendant responded, 'Mexico,' Billison asked whether defendant had any other identification. Defendant responded affirmatively and produced a resident alien card and a Social Security card, both of which Billison immediately recognized as forgeries. Billison later testified that, had defendant chosen to walk away at any point before he produced the forged documents, he 'suppose[d]' that he would have allowed defendant to do so. The entire encounter lasted 'less than two minutes.'

"Defendant was arrested and charged with two counts of first-degree criminal possession of a forged instrument. Before trial, defendant moved to suppress evidence of the forged instruments. The trial court denied defendant's motion, reasoning that defendant's interaction with Billison was a 'mere street encounter,' that Billison's request to see identification was not a stop of defendant, and that defendant's production of the fraudulent identification provided probable cause to arrest him. * * * [D]efendant agreed to a stipulated facts trial and was convicted."

244 Or App at 215-16 (second brackets added).

As we explained previously, "the only issue on appeal is whether Billison's inquiry regarding *additional* identification escalated the encounter into a stop and the stop

was unsupported by reasonable suspicion in violation of Article I, section 9." *Id.* at 216 (internal quotation marks omitted; emphasis in original). On appeal, we reversed the trial court, concluding that, under *Ashbaugh*, "a reasonable person in defendant's position would conclude that he or she was the subject of an investigation and was not free to leave." *Id.* at 219. Specifically, we determined that "[a] reasonable person would have concluded that Billison's questions after defendant provided his Oregon identification card were intended to determine whether defendant was legally in the United States." *Id.* at 220. Subsequently, the Supreme Court issued its decisions in *Backstrand, Highley,* and *Anderson,* and vacated our decision and remanded for further consideration in light of those decisions.

In *Backstrand, Highley,* and *Anderson,* the Supreme Court addressed whether an officer's request for identification was an unlawful seizure under Article I, section 9, and, in all three cases, the court held that the defendants had not been illegally seized based on the totality of the circumstances. In *Backstrand,* the court summarized the general principles governing when an encounter with an officer becomes a seizure for constitutional purposes. 354 Or at 398. In general, law enforcement officers may "approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them." *Id.* at 400 (citing *State v. Holmes,* 311 Or 400, 410, 813 P2d 28 (1991)). "What distinguishes a seizure (either a stop or an arrest) from a constitutionally insignificant police-citizen encounter 'is the imposition, either by physical force or through some show of authority, of some restraint on the individual's liberty.'" *Id.* at 399 (quoting *Ashbaugh,* 349 Or at 309).

The test to determine whether a seizure has occurred "is an objective one: Would a reasonable person believe that a law enforcement officer intentionally and significantly restricted, interfered with, or otherwise deprived the individual of his or her liberty or freedom of movement." *Id.* (citing *Ashbaugh,* 349 Or at 316). A seizure exists if, under the totality of the circumstances, an officer's conduct would be reasonably perceived "as coercive in the sense that it would cause the citizen to reasonably believe that the officer is intentionally restraining the citizen's liberty or freedom

of movement in a significant way—that is, in a way that exceeds the bounds of ordinary social encounters between private citizens." *Id.* at 400 (citing *Holmes*, 311 Or at 409-10). "Explicitly or implicitly, an officer must convey to the person with whom he is dealing, either by word, action, or both, that the person is not free to terminate the encounter or otherwise go about his or her ordinary affairs." *Id.* at 401-02. "A mere request for identification made by an officer in the course of an otherwise lawful police-citizen encounter does not, in and of itself, result in a seizure." *Id.* at 410.

Thus, the question in this case is whether, based on the totality of the circumstances, a reasonable person would believe that Billison had "[e]xplicity or implicitly" conveyed to defendant that he was not "free to terminate the encounter or otherwise go about his * * * ordinary affairs." *Id.* at 401-02.

In *Backstrand*, the Supreme Court held that the defendant was not unlawfully seized when a police officer approached him inside an adult store because he thought the defendant was a minor, asked him how old he was, and asked to see his identification. 354 Or at 414. The court concluded that, because there was no "accompanying exercise of authority to restrain," a reasonable person would not believe "that the officer had *significantly* restricted his or her liberty." *Id.* (emphasis in original). The court reasoned that a reasonable person engaged in an age-restricted activity would expect to be questioned about his or her age—for example, when purchasing alcohol or tobacco—and, accordingly, asking a person's age is not conduct that is "significantly beyond that accepted in ordinary social intercourse." *Id.* at 415 (citing *Holmes*, 311 Or at 410). Thus, the officer's request for the defendant's age and his identification was a mere inquiry, not a seizure. *Id.* at 415-16.

Unlike in *Backstrand*, here, based on the totality of the circumstances, the facts support an objectively reasonable belief that defendant's liberty was restricted in a constitutionally significant manner by the officer's second request for identification. After arresting every adult at the residence either on drug charges or for immigration violations, Billison—an ICE officer—called defendant's sister and requested that someone come to the house to pick up the

minors. Pursuant to Billison's request, defendant arrived and informed Hillsboro police officers that he was there to take custody of the children. The officers then called to Billison—who was dressed in plain clothes but was wearing a badge identifying himself as a federal immigration officer—to talk with defendant. After determining that defendant was there to pick up his nieces, Billison asked for identification, and defendant presented an Oregon identification card. "[A]s far as the record reveals, [defendant's identification card] was a satisfactory form of identification" and "established defendant's identity." *State v. Zamora-Martinez*, 229 Or App 397, 403, 211 P3d 349 (2009) (*Zamora-Martinez I*), *vac'd and rem'd*, 349 Or 664, 249 P3d 1282 (2011). However, instead of releasing the children to defendant, Billison proceeded to ask defendant where he was from and, upon learning that defendant was from Mexico, Billison requested additional identification. At no point did Billison inform defendant that he was not in trouble or explain why he needed to see the additional identification. When Billison made the request, there were at least five other officers, in uniform, within defendant's line of sight. Unlike in *Backstrand*, where the court reasoned that, at most, a person might expect to be asked to leave the store if he or she would not, or could not, produce identification, here a person might reasonably expect that, if he or she either would not, or could not, produce identification, the federal immigration officer would detain him or her. In addition, there is no evidence in the record that defendant would have been able to go about his "ordinary affairs"—picking up the children pursuant to Billison's request—without complying with Billison's request for additional identification.

Thus, under the totality of the circumstances presented here, we conclude that a reasonable person would have believed that the officer was exercising his authority to significantly restrain defendant's liberty or freedom of movement. Therefore, we conclude that defendant was unlawfully seized by the officer's second request to see identification and the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.